# WHEELING.

## SHIPLEY *v.* PEW.

Submitted June 22, 1883—Decided March 15, 1884.

On May 5, 1855, the plaintiff recovered a judgment against the defendants, and sued out execution thereon within the year. The last execution was returnable to the first Monday in January, 1859, upon which no return of any officer was ever made. On September 16, 1874, the plaintiff filed his bill against the defendants to enforce the lien of his judgment against the real estate of the defendants, which was resisted on the ground that the lien of the judgment was barred by the statute of limitations. HELD:

I. That the plaintiff's right to sue out other executions, or to bring a *scire facias* or action upon his judgment, expired at the end of thirteen years, ten months and fourteen days from the return day of said last execution ;

II. That the lien of the plaintiff's judgment ceased to exist when his right to sue out other executions, or to bring a *scire facias* or action thereon, was barred by the statute of limitations; and,

III. That on September 16, 1874, when the plaintiff's suit was instituted, the lien of his judgment had ceased to exist, and that his suit to enforce same could not be sustained. (p. 498.)

WOODS, JUDGE, furnishes the following statement of the case:

This was a bill filed in the circuit court of Gilmer county on September 16, 1874, by Daniel E. Shipley, surviving partner of Shipley & Howard against Preston Pew, as principal

debtor, Peregrine Hays and Levi Johnson as his sureties and Gideon D. Camden, to enforce the lien of a judgment recovered by Shipley & Howard on May 5, 1855, against said Pew and his said sureties, on a forthcoming board for six hundred and seventy-nine dollars and seventy-nine cents, to be discharged by the payment of three hundred and thirty-nine dollars and eighty-nine and one half cents, with interest from November 23, 1854, and seven dollars and seventy-nine cents costs, subject to three small credits, amounting in the aggregate to seventy-one dollars and fifty-four cents. The plaintiff claimed that the balance of his judgment was unpaid, and constituted a lien upon certain real estate mentioned in the bill owned by the defendant Hays, and prayed that the same might be sold to pay the balance due upon the judgment and for general relief. The bill further alleged that on July 19, 1859, the defendant Pew confessed a decree in the clerk's office of the said court in favor of the plaintiff for the amount of said judgment, appointing a commissioner to rent certain real estate then owned by him to pay the judgment; and that Pew had since that time conveyed said land to Hays, and that said decree had been unproductive and the judgment still remained unpaid. None of the defendants made defence to the plaintiff's bill but Hays, who, on March 16, 1874, appeared in court and filed his answer, but neither the bill nor answer was sworn to. The answer alleged that the judgment had been fully paid; that he was no party to the suit in which Pew confessed the decree on July 19, 1859; that no bill was ever filed in that cause, and no process was ever served upon him therein; that the suit was never prosecuted; that he had never been made a party to any suit until September 16, 1874, when this bill was filed; that he was not served with process therein until September 26, 1874; that the last execution which issued on said judgment was dated on November 26, 1858, returnable to the first Monday in January, 1859, and that therefore the judgment was barred by the statute of limitations, and he sets up, and relies on the same as a bar to the enforcement of the said judgment against him, and against the said real estate, which he had purchased and paid for, and for which he has long since obtained a conveyance; that plaintiff having taken no

steps since July 19, 1859, to enforce the decree confessed by Pew, the suit by reason of said *laches* has been abandoned and discontinued; he also alleged the existence of certain other unsatisfied judgments against Pew in favor of other persons not parties to the bill, who ought to be made parties defendants, and concluded with the usual prayer to be hence dismissed with costs, but did not *ask or pray for any affirmative relief.*

. On the same day, after the answer was filed, the plaintiff filed a special reply thereto; and the defendant Hays filed a special rejoinder to said special reply, and the plaintiff filed a *rebutter* to said rejoinder; but no general replication to said answer was at that time filed, although in the final decree it appears that the cause was heard upon a general replication to the answer of Hays. Although the special reply was improper as no affirmative relief was asked for in the answer, and ought not to have been filed, and the *rejoinder* and *rebutter* were *wholly unwarranted by any of the rules of pleadings in courts of equity*, they were allowed to be filed by the consent of the plaintiff and defendant Hays and were by the court treated as amendments made and added to the bill and answer then in the cause; that is to say, the special reply and rebutter of the plaintiff, as amendments to his bill, and the rejoinder of the defendant Hays as an amendment to his answer. Treating the plaintiff's bill as so amended, it alleged, (in addition to what has been already stated), that said judgment was not paid; that the last execution which issued thereon was returnable to the 7th of Janury, 1859; that a state of war existed in the county of Gilmer from the 27th of April, 1861, the date of the proclamation of the President of the United States declaring the blockade, until the 2d of April, 1866, the date of his proclamation declaring that peace was restored and that during the period between the 27th April, 1861, and the 2d April, 1866, the statute of limitations did not run against his said judgment, and that by excluding that period from the statutory limitation of ten years, the bar would not be complete until the 12th day of December, 1874; that Pew confessed the decree of the 12th July, 1859, at the request of Hays; that Hays purchased said real estate from Pew and agreed to pay the plaintiff's judg-

ment, of which he had full knowledge as he was one of the judgment-debtors; that the civil war continued longer in West Virginia than in any other State by reason of the lawlessness of many of its people, and that the "plaintiff living in Maryland and sympathizing with the rebellion was unsafe to appear as a collector in West Virginia, and that his retained counsel was not permitted to practice his profession by reason of his participation in the rebellion until 1871, and that he was therefore obstructed in the prosecution of his legal rights to enforce payment of said judgment;" and that from 1869, when the creditor's bills of *Northwestern Bank of Virginia* v. *Samuel S. Hays, &c.,* and of *R. P. Camden* v. *Peregrine Hays, &c.,* were pending in said court the statute of limitations did not run against the plaintiff's said judgment. Treating the answer of Hays as amended by his *rejoinder* it alleged (in addition to what has been already stated), that the judgment has been fully paid off, as will be seen from the report of Special Commissioners Linn and Norris in the chancery causes pending in said court, of *Northwestern Bank of Va.* v. *Samuel S. Hays, &c.,* and of *R. P. Camden* v. *Peregrine Hays, &c.,* made an exhibit in said *rejoinder*; that flagrant war ceased in West Virginia and in Gilmer county in the month of April, 1865, and that the circuit court of Gilmer county was opened and held in said county on the 30th of May, 1865, and that prior and after that date said court was open for the transaction of business, continuously and regularly, without obstruction or hindrance from said war, and he referred to the "law and chancery order books and the papers, books and files of causes ended and pending and all the papers pertaining to the said circuit court of Gilmer county, which are in the custody and are a part of the records of this Court, as evidence of the matters thereinbefore pleaded"—and again relied upon the statute of limitations, in bar of the plaintiff's judgment.

On the 17th of March, 1876, the cause was heard and the circuit court rendered the following decree:

"This cause came on this day to be heard upon the bill of the plaintiff, answer of defendant, Hays, special replication thereto, rejoinder and rebutter, and exhibits, and was argued by counsel. On consideration whereof, it is adjudged, or-

dered and decreed that this cause be referred to any one of the commissioners of this court—

"1st. To ascertain and report the balance due on the judgment claimed by the plaintiff, and when the last execution which may have issued thereon was returnable.

"2d. To ascertain and report what is the several amounts of the judgments alleged to be outstanding by the defendant, Hays, in his answer as binding the lands of the defendant, Pew, are unpaid and the order and priorities of the same.

"3d. To ascertain and report whether the defendant, Pew, is the owner of any other lands than the lots and tracts claimed by the defendant, Hays.

"4th. That said commissioner ascertain and report by what title Hays claims or holds said lots and tracts of land. If purchased from defendant, Pew, when, and the consideration, and if deeds were made, when recorded. And said commissioner will report the testimony taken by him as well as any paper evidence of title and that he report any other and further matter he may deem necessary, with leave to examine any of the parties upon oath or upon interrogatories."

The commissioner made a report as directed, to which no exceptions were filed, whereby it appeared that all the judgments against said Pew, mentioned in the answer of defendant Hays, except that claimed by the plaintiff were paid off, or if not paid, were barred by the statute of limitations; that the said real estate had been conveyed by Pew to Hays by deed dated April 7, 1866, and duly recorded March 31, 1868; that the consideration for said deed, two hundred dollars, was paid at the date of the deed, and that Pew owned no other real estate. It further appeared from the report that there still remained unpaid upon the plaintiff's judgment the sum of five hundred and ninety-one dollars and seven cents as of the date of September 11, 1877; that in the years 1855 and 1856 the plaintiff sued out various writs of *fieri facias and venditioni exponas*; that on November 26, 1858, a writ of *fieri facias* issued on said judgment returnable to the first Monday in January, 1859, and that on the 17th of March, 1874, the plaintiff sued out another *fieri facias* on said judgment, returnable to May rules, 1874, which was never placed

in the hands of any officer to be executed. The said *fieri facias* dated November 26, 1858, returnable to January rules, 1859, was received, by the sheriff of Gilmer county on the 27th day of November, 1859, but was never returned, nor is it alleged in any of the pleadings, nor does it appear, that any return of any kind was ever made on said execution.

In this state of the pleadings and proofs the cause was finally heard on the 17th day of September, 1878, when the court rendered the following decree:

"This cause came on this day to be heard on the bill of the plaintiff, answer of the defendant Peregrine Hays, general replication thereto, special reply in writing to said answer, rejoinder in writing thereto, rebutter in writing thereto, which said reply, rejoinder, rebutter in writing, having been by consent of counsel resorted to for convenience in presenting the questions propounded by the same, are here now treated by the court as amendments to the pleading in the cause, and on exhibits, report of commissioner N. M. Bennett, depositions accompanying the same, answers of Preston Pew to interrogatories propounded to him, and exhibits and papers referred to in said report. And the court having seen and inspected the proceedings of the record of the circuit court of the county of Gilmer appearing in its law and chancery order books and rule books, and finding from such inspection that said court held at the term commencing on the 30th day of May, 1865, and that from that date to the present · continuously and without obstruction suits and legal proceeding generally were instituted, prosecuted and defended in said court as usual in times of peace at terms of said court held at the times provided by law, and that said court and its office were for the period aforesaid open and justice regularly administered without obstruction or hindrance, on consideration of all whereof, the court is of opinion that the cause on the pleadings and proof is for the defendant, Peregrine Hays, and that the property sought to be subjected by the plaintiff is not liable to be subjected to the plaintiff's demand in the hands of said Hays. And the plaintiff asking no relief against defendant, Levi Johnson, and not asking any other relief against the defendant, Preston Pew, than the subjection of said particular property, and no other decree being desired

or asked for by the plaintiff against the defendants, Johnson and Pew, if the right thereto he hath, it is adjudged, ordered and decreed that the plaintiff's bill be dismissed, and that the plaintiff pay to Peregrine Hays his costs about his defence here expended."

From this decree the plaintiff obtained an appeal to this Court.

The counsel for the appellant insists in argument that said decree is erroneous and should be reversed for three reasons: first, because the said judgment has never been paid; second, because it was not barred by the statute of limitations; and third, because the said real estate in the hands of Hays was liable for the payment of the judgment.

J. M. Bennett for appellant.

No appearance for appellee.

Woods, Judge:

The answer of the defendant Hays presents two grounds of defence against the demands of the plaintiff, either of which if established is a complete defence.

The first is, that the plaintiff's judgment has been fully paid, and the second is, that the judgment at the time the plaintiff instituted his suit, was barred by the statute of limitations. Both of these allegations in the defendants' answer are denied by the general replication thereto, and the burden of proving these grounds of defence rests upon the defendants.

The only proof of payments, in the cause, were the returns made by the sheriff of Gilmer county on executions issued upon the judgment before the date of that execution, which was returnable to the first Monday in January, 1859, and the commissioner reported, that on September 11, 1877, there was a balance of principal and interest of five hundred and ninety-one dollars and seven cents remaining unpaid upon the plaintiff's judgment.

The only question remaining to be considered is, whether on September 16, 1874, when the plaintiff's suit was instituted the lien of his judgment had ceased to exist? The judg-

ment was recovered on May 8, 1855, and was therefore sub-
ject to the provisions of the 12th and 13th sections of chap-
ter 186 of the Code of Virginia. The last execution issued
thereon was a *fieri facias* dated November 26, 1858, and
returnable to the first Monday in January, 1859, which
could not have been later than January 7, 1859. This execu-
tion was placed in the sheriff's hands on November 27, 1858,
to be executed, but no return was ever made or endorsed
thereon by the sheriff.

By the 12th section of chapter 186 of the Code of Vir-
ginia, it is provided, that "on a judgment execution may
issue within a year, and a *scire facias* or action may be
brought within ten years after the date of the judgment;
and where execution issues within the year, other executions
may be issued, or a *scire facias* or action may be brought
within ten years from the *return day of an execution on which
there is no return by an officer*, or within twenty years from
*the return day of an execution on which there is such return*,"
and by section 13 of said chapter it is expressly declared
that "no execution shall issue, nor any *scire facias* or action
be brought on any judgment in this State other than for the
commonwealth, after the time prescribed by the preceding
section" (12) except in certain excepted cases, none of which
exist in the case under consideration. (Under the said pro-
visions of law then in force, the plaintiff's said judgment
would not have been barred until the expiration of twenty
years from the return day of said *venditioni exponas*, that is
until the same day in July 1876.) But the Code of West
Virginia which went into operation on April 1, 1869,
repealed said sections 12 and 13 of chapter 186 of the Code
of Virginia, and enacted in lieu thereof, sections 11 and 12
of chapter 139. By said *eleventh* section it is provided that
executions may be issued within two years after the date of
the judgment; and that where execution issues within two
years aforesaid other executions may be issued on said
judgment, without notice within ten years, from the *return
day of the last execution issued thereon* on which *there is no
return by an officer, or which has been returned unsatisfied.*"

By section 12 of said chapter 139 Code of West Virginia
it is declared that "no execution shall issue, nor any *scire*

*facias* or action be brought on a judgment in this State, other than for the State, after the time prescribed by the preceding section (eleven), except that in computing the time, the period mentioned in section 4 of chapter 136, and any time during which the right to sue out execution on the judgment is suspended by the terms thereof or by legal process, shall be omitted; and sections 16, 17, 18 and 19 of chapter 104 shall apply to the right to bring such action or *scire facias* in like manner, as to any right, action or *scire facias* mentioned in these sections." By said section 4 of chapter 136 the period from the 17th of April, 1861, to the 1st of March, 1865, is excluded from said computation of time. By section 18 of chapter 104 of the Code as amended by the act of the Legislature passed the 7th of April, 1873, there is also to be excluded from such computation, any period of time during which the plaintiff may have been · "obstructed in the prosecution of his right by war, insurrection or rebellion." Acts 1872–1873, p. 286.

When the Code of West Virginia went into effect, ten years from the return day of the *fieri facias*, which was returnable to the January rules, 1859, which was then the last one issued upon judgment, on which there was no return by an officer, had already expired; but by the saving clause of the said section 12, excluding from the computation of time the said period between the 17th April, 1861, and the 1st of March, 1865, the time within which an execution might issue upon said judgment was extended for the further· period of three years, ten months and fourteen days, so that unless the plaintiff could show himself entitled to exclude from such computation of time, some additional time, all the plaintiff's remedies to enforce his said judgment would be barred after the 15th day of February, 1873.

But the plaintiff by his bill, as amended by his special replication and "rebutter," claims that his suit which was commenced on the 16th of September, 1874, was not barred because he was entitled to exclude from such computation the whole period of the civil war which he insists commenced on the 27th April, 1861, the date of the President's proclamation of blockade, and ended the 2d day of April, 1866, when, by the President's proclamation peace was restored,

and by excluding all this period, which was four years, eleven months and five days, the said period of *ten years from the 7th of January*, 1859, *would not expire until the* 12th day of December, 1874. Admitting for the sake of the argument only, that the plaintiff was entitled to exclude all of the said period, his conclusion is nevertheless erroneous, for even in that case, the *ten* years would expire on the 12th December, 1873, and not 1874. But the period excluded by the said section 12 of chapter 139, begins on the 17th of April, instead of the 27th of April, 1861, and therefore the said period of ten years, according to the *pretensions of the plaintiff*, would be extended for the further period of ten days, and the ten years would expire, on the 22d of December, 1873. It is alleged by the plaintiff in his bill as amended, that because he resided in the State of Maryland during the war, and sympathized with the rebellion it was unsafe for him to appear in West Virginia to collect his debt; and because he could not have the benefit of the services of his retained counsel who was excluded from practicing his profession by the *lawyers' test oath*, he was further obstructed in the prosecution of his right to enforce the collection of said judgment. Now it does not follow that because a plaintiff cannot have the services of a particular counsellor or attorney, that he was for that cause obstructed in the prosecution of his right, for he was still at liberty to employ other counsel, equally efficient, and if such could not be found, he was in as good condition in that respect, as any resident citizen of the State. If however the plaintiff had in any manner participated or aided the cause of the "Confederates" in the late civil war and for that cause *had been, or might have* been precluded from prosecuting any suit in this State by reason of the suitor's test oath, he could, by simply alleging in his bill, and verifying the same by his own affidavit, or by his affidavit filed in the cause stating that he "could not truly make the affidavit prescribed by section 27 of chapter 106 of the Code of West Virginia," have excluded from the computation of time within which he might have enforced his said judgment, the period from the 28th day of February, 1865, to the 6th day of February, 1873. This he has not attempted to do, nor has he offered either his own affidavit, nor any other evidence

in support of any such pretensions.   It was a matter of vital
importance to allege this fact, if it existed; it is not alleged,
and it must be presumed it does not exist.   It is further in-
sisted in argument by the appellant's counsel, that the period
during which the stay law was in force, and during which
suits properly cognizable in the county of Gilmer were
allowed by statute to be prosecuted in the county of Dod-
dridge, should also be excluded from such computation of
time.   It might be a sufficient answer to this argument to say,
that no such allegations appear in the pleadings.  But, when
we remember that the first stay law was passed on the 26th
of July 1861, and the last expired by its own limitation on
February 1, 1863, and the whole period of its existence was
only eighteen months and five days; and that the time
during which suits cognizable in Gilmer county could be
brought in Doddridge county, commenced on October 15,
1863, and ended on February 13, 1866, and therefore only
embraced a period of *two years three months and twenty-eight
days*; and as both of these periods are embraced in the
period from April 17, 1861, to April 2, 1866, it becomes
evident that the plaintiff was not in any manner obstructed
in the prosecution of his right to enforce his judgment
either by the existence of said stay law or by the law
authorizing certain suits which were properly cognizable in
Gilmer county to be brought in the county of Doddridge.
But the statute authorizing such suits to be so brought pro-
vided, that "nothing therein contained should be construed
to affect any provision of law for the limitation of actions or
suits."   Acts 1863 ch. 70, Acts 1866 ch. 25, Acts Reorg.
Gov't Va. 1861, p. 18, p. 39; same, extra session 1862, p. 8.
Neither can the plaintiff derive any benefit from the de-
cree confessed by the defendant Pew in favor of the plain-
tiff on July 19, 1859, for on November 17, 1877, the suit in
which the same was confessed, was, by the decree of said
court "for reasons appearing to the court dismissed."   Now
if this decree is not to be taken and held as a complete bar
to any further suit brought to enforce the payment of said
judgment, it must at least be held as equivalent to a dismissal
of the suit on the motion of the plaintiff without prejudice.
This suit thus brought and dismissed cannot have the effect

to arrest the running of the statutory bar, against the lien of the plaintiff's judgment in another suit brought to enforce the collection thereof. *Braxton* v. *Wood's Adm'r*, 4 Gratt. 26.

The last execution issued on the plaintiff's judgment was returnable on the first Monday of January, 1859. As no return of the officer was endorsed thereon, the plaintiff's right, under the law then in force, to sue out other executions, or to bring a *scire facias* or action thereon would have expired at the end of ten years after the return day of said execution.

We have seen, by section 11 of chapter 139 of the Code of West Virginia, that where executions had issued within two years from the date of the judgment, other executions might issue thereon within ten years from the return day of the last execution issued thereon, on which there is no return by an officer or which had been returned unsatisfied; and that by section 11 of chapter 139 of said Code, the right to sue out other executions, or to bring a *scire facias*, or action on a judgment, should not exist after the period mentioned in section 11 of that chapter, except that in computing the time within which new executions might issue or *scire facias* or action might be brought thereon, the period from the 17th day of April, 1861, until the 1st of March, 1865, (and certain other excepted periods none of which have any application in this case,) is to be excluded from such computation. Excluding this period and the plaintiff's right to sue out other executions, or to bring a *scire facias* or action, on his judgment expired at the end of thirteen years, ten months and fourteen days from the first Monday in January, 1859, which could not have been later than the 21st day of November, 1872. As the lien of the plaintiff's judgment ceased to to exist when his right to sue out execution, or to bring a *scire facias* or action thereon, is barred by the statute of limitations; it follows that on September 16, 1874, when this suit was instituted the lien of the plaintiff's judgment had ceased to exist, and therefore no suit to enforce the same could be sustained. *Werdenbaugh* v. *Reid, &c.*, 20 W. Va. 588. We are therefore of opinion, that the decree of the circuit court of Gilmer county rendered in this cause on the 17th of September, 1878, must be affirmed, and that the ap-

pellant must pay the appellee Hays his costs in this Court
expended and thirty dollars damages.

AFFIRMED.