118  569
124  381
118  569
130  38
130  60

No. 14,515.

### BROWN *v.* WUSKOFF ET AL.

JUDGMENT.—*Of Justice of Peace.— Filing Transcript.—Duration of Lien.— Execution.—Injunction.—Statute Construed.*—A judgment rendered before a justice of the peace is a lien upon the real estate of the defendant within the county from the time a transcript thereof is filed, recorded and docketed in the county clerk's office, to the end of ten years from the rendition of the judgment and not from the time the transcript is filed, and a sale upon execution issued after ten years from the rendition of the judgment will be enjoined at the suit of an intervening purchaser. Sections 608, 612 and 613, R. S. 1881, construed.

From the Montgomery Circuit Court.

*B. Crane* and *A. B. Anderson*, for appellant.

*T. V. Maxedon, H. D. Vancleave, W. T. Brush* and *A. D. Thomas*, for appellees.

OLDS, J.—The complaint is in two paragraphs, each alleging a similar state of facts.

The facts which are important for the determination of the questions presented, as they appear from the complaint, are as follows: On January 23d, 1877, defendants Moses Wuskoff and Daniel Husburg obtained a judgment for $163.40 against William R. Fry and Willian J. Ott, before Scott Noel, a justice of the peace of Parke county. On February 15th, 1877, execution issued thereon, and August 22d, 1877, the execution was returned by the constable *nulla bona.*

December 6th, 1880, the appellant, Joseph S. Brown, defendant William R. Fry, and one Aaron H. Blair, purchased a tract of land at an agreed price of $5,000, containing twelve acres, situated in Montgomery county, from one Alexander Thompson, who held it as trustee. The purchasers paid one-third cash, each furnishing his proportionate share of the amount, and executed their notes for the balance of the purchase-money. Aaron Hughes and wife held a life-estate in the land, and Brown, Blair and Fry purchased their life-estate for $1,000, and paid cash therefor, each contributing his proportionate share thereof, and Thompson, Hughes and Hughes conveyed said land by warranty deeds to Brown in trust for himself, Blair and Fry, the purchasers executing a mortgage to Thompson for the balance of the purchase-money due him, and the deeds and mortgage were duly recorded. Brown, Blair and Fry surveyed and platted the land into lots, numbering from 1 to 42, inclusive, as Brown, Blair and Fry's addition to Crawfordsville. April 8th, 1883, Fry borrowed $3,000 of the First National Bank of Crawfordsville, Indiana, and executed his note to the bank for the same, with Brown and one Insley as sureties; he also executed his mortgage to Brown on his undivided one-third of all the unsold lots to indemnify Brown as such surety. January 8th, 1883, Blair sold and conveyed by warranty deed all his interest in the lots to Brown. May 9th, 1883, appellees Wuskoff and Husburg filed a duly certified transcript of their judgment against Fry and Ott in the office of the clerk of the Montgomery Circuit Court, and the same was by said clerk on said day duly recorded in the order-book of the court, and the judgment was entered in the judgment docket. May 23d, 1883, Brown, as trustee for himself and Fry, sold and conveyed by warranty deed lot 25 to William Halehan in consideration of $325, and put Halehan in possession of the same. September 25th, 1883, Fry sold and by warranty deed conveyed to Alexander Thompson all his interest in the lots yet remaining unsold, Thompson, in consideration for the

conveyance, to pay $1,800 remaining unpaid on the note to the First National Bank of Crawfordsville. October 10th, 1883, Thompson paid off the note to the bank, on which Brown and Insley were sureties, and Brown entered satisfaction of the indemnity mortgage. August 31st, 1887, Thompson sold and conveyed by warranty deed all his interest in the lots to Brown. March 23d, 1888, Wuskoff and Husburg procured from the justice, Scott Noel, a certificate that an execution had been duly issued by him on the judgment in their favor against Fry and Ott, to the proper constable, and the constable had returned the same *nulla bona,* and on the same day filed the certificate in the office of the clerk of the Montgomery Circuit Court, and the clerk duly recorded it in the order-book of the court. March 30th, 1888, Wuskoff and Husburg caused an execution to be issued by the clerk of the Montgomery Circuit Court on the judgment, and delivered the same to appellee McCloskey, as sheriff of Montgomery county, and directed him to levy the execution on the real estate which had been so conveyed to, and was then owned by, Brown; also, on lot 25, which had been sold and conveyed to Halehan. The sheriff levied the execution on the said real estate, including lot 25, and advertised all of the said lots for sale. Thereupon, on the 23d day of April, 1888, the appellant brought this suit, alleging the facts as herein stated, asking that the sheriff be enjoined from executing said writ and selling the lots, that his title to the same be quieted, and that the indemnity mortgage be declared a first lien on the lots and foreclosed to pay the balance of the $1,800.

Appellees Wuskoff and Husburg filed a joint demurrer to each paragraph of the complaint, and defendant McCloskey filed separate demurrers to each paragraph of complaint. The cause came up for hearing and the court sustained each of the demurrers to each paragraph of the complaint, to which decision of the court the appellant duly excepted, refused to amend, and the court rendered judgment, in favor of appel-

lees, against appellant for costs. The errors assigned are the sustaining the demurrers to the complaint.

The questions presented are: *First.* The justice before whom the judgment was rendered, and who certified the same, resided in Parke county, the real estate is situated in Montgomery county, and the transcript was filed and recorded in the clerk's office of the Montgomery Circuit Court; the official character of the justice not being certified to by the clerk of the Parke Circuit Court, was the transcript entitled to record, or had it any validity as a lien without the certificate of the clerk of the Parke Circuit Court as to the official character of the justice? *Second.* More than ten years having elapsed between the rendition of the judgment before the justice of the peace and the issuing of the execution by the clerk of the Montgomery Circuit Court, Fry having disposed of all his interest in the lots before execution issued, and Brown having become the owner of the same, except lot 25, which he had conveyed by warranty deed to Halehan, but the execution issuing less than ten years from the time of filing the transcript, was the transcript still a lien on the interest Fry owned in the lots at the time the transcript was filed which could be enforced by execution?

A further question is presented as to the right of the appellant to have a foreclosure of his mortgage.

Section 608, R. S. 1881, provides: "All final judgments in the Supreme and circuit courts for the recovery of money or costs shall be a lien upon real estate and chattels real, liable to execution in the county where judgment is rendered, for the space of ten years after the rendition thereof, and no longer, exclusive of the time during which the party may be restrained," etc.

Section 612 provides: "It shall be the duty of every justice of the peace in this State, when requested by the plaintiff or his agent, to make out and certify a true and complete transcript of the proceedings and judgment in any cause upon any docket legally in his possession. The plain-

tiff may file such transcript in the office of the clerk of any court in this State."

Section 613 provides: "It shall be the duty of the clerk, forthwith, to record the transcript in the order-book, and docket the judgment in the judgment docket. The judgment set forth in the transcript shall be a lien upon the real property of the defendant within the county, to the same extent as judgments of the court, from the time of filing the transcript."

The provision in section 613 is, that the judgment rendered before a justice of the peace, when certified and recorded in the order-book in the clerk's office, shall be a lien on the real property of the defendant to the same extent as judgments of the court, from the time of filing. Section 608 declares the extent of the lien to be for the space of ten years after the rendition thereof, and no longer. Therefore, manifestly the proper construction to be given to section 613 is that the lien shall take effect from the time of filing the transcript, and that it shall extend and be in force for the period of ten years from the rendition of the judgment.

In the case of *Martin* v. *Prather*, 82 Ind. 535, this court says: "True, the filing of a transcript after the ten years had expired would not make the judgment a lien upon real estate." It is contended by counsel for appellees that the lien extends ten years from the time of filing the transcript. We can not agree with that theory. There is no time fixed by the statute when the transcript shall or may be filed in the office of the clerk. It may be filed at any time during the lifetime of the judgment, although it would not be a lien after the ten years from the rendition thereof. Proper steps being taken, execution might be issued any time during the lifetime of the judgment, and levied by the sheriff on real estate owned by the execution defendant at the time of the levy; but to hold that the lien extends ten years from the date of filing and recording the transcript, would be to hold that ten years additional life might be given to a judgment

rendered before a justice of the peace by waiting until the day before the judgment is barred by the statute of limitations and then filing a certified transcript in the office of the clerk of the circuit court. . More than ten years having elapsed between the rendition of the judgment by the justice of the peace and the issuing of the execution by the clerk of the circuit court, the lien created by the transcript had expired. Fry having before that time parted with the title to the real estate, the appellant having become the owner of it, except lot 25, which he had before that time conveyed to Halehan by warranty deed, and the appellees, claiming a valid lien on the lots by virtue of the judgment, having had an execution issued and levied upon the lots and advertised them for sale, the appellant, on the facts stated in the complaint, was manifestly entitled to have his title to the lots quieted as against appellees, and to a restraining order to prevent the sale. The court, therefore, erred in sustaining the demurrers to the complaint. As this one question settles the whole case, it is unnecessary to pass upon the others. *Lake Shore, etc., R. W. Co.* v. *Cincinnati, etc., R. W. Co.,* 116 Ind. 578.

The judgment is reversed and cause remanded, with instructions to the court below to overrule the demurrers to each paragraph of the complaint.

Filed Jan. 10, 1889.

## On Petition for a Rehearing.

Olds, J.—It is very earnestly contended by counsel that this case was wrongly decided, and that an unwarranted construction was placed upon the statute declaring in what manner and to what extent judgments rendered before justices of the peace shall be liens upon real estate. Some authorities are cited which it is contended are in conflict with the original opinion. It is asserted that the case of *Rand* v. *Garner,* 75 Iowa, 311, is in direct conflict with the decision in this case.

An examination of that case will disclose the fact that it is not in conflict with what we decided in this, and that the questions presented are not at all similar, the statutes under consideration being entirely different.

The Iowa statute declaring the manner and extent of the liens of judgments rendered before justices of the peace upon real estate, is as follows:

Section 3568. "The clerk shall forthwith file such transcript and enter a memorandum thereof in his judgment docket, noting the time of filing the same, and from the time of such filing it shall be treated in all respects, as to its effect and mode of enforcement, as a judgment rendered in the circuit court as of that date; and no execution can thereafter be issued by the justice on the judgment." The court in that case very properly says of that statute: "Under that provision we think the judgment has all the force and effect of a judgment rendered by the circuit court as of the date of the filing of the transcript." The Iowa statute merges the judgment before the justice into a judgment in the circuit court; it cancels the justice's judgment and creates a new judgment in the circuit court. But the statute in this State differs very materially from the Iowa statute. It declares that judgments of the circuit court shall be a lien for the period of ten years from the rendition thereof, and no longer. After providing for the procuring, filing, recording and docketing of a judgment rendered before a justice, the statute declares that "The judgment set forth in the transcript shall be a lien upon the real property of the defendant within the county, to the same extent as judgments of the court, from the time of filing the transcript."

Section 614 provides how executions shall be obtained on such judgment. It requires that an execution shall be issued by the justice, and if it be returned endorsed that no goods or chattels could be found sufficient to satisfy the judgment, or a part thereof, upon a certificate of such fact being filed with the clerk and recorded by him, and upon affidavit being

filed that the judgment is unpaid in whole or in part, stating the amount due, an execution shall issue on the judgment. The filing of the transcript in the clerk's office does not affect the validity of the judgment rendered before the justice; execution may still be issued upon it, and it may be collected, the same as if no transcript had been filed.

The statute declaring that a judgment rendered before a justice shall be a lien on real property does not stipulate that it shall be a lien for ten years from the time of the filing or recording of the transcript, but that it shall be a lien to the same extent as judgments of the court. And the word "extent" must apply as well to the time of its duration as to the character of the lien, and we give full force to the words of the statute when we say the duration of the lien shall be for ten years from the date of the rendition of the judgment, for that is the duration of the lien of a judgment rendered in the circuit court, as it is declared by statute it shall be a lien for ten years and no longer. The construction we place upon the statute is, that a judgment rendered before a justice shall be a lien from the time the transcript is filed, recorded and docketed, to the end of ten years from the rendition of the judgment. If we transpose the words of the statute to read: "From the time of filing the transcript, the judgment set forth in the transcript shall be a lien upon the real property of the defendant within the county, to the same extent as judgments of the court," it would hardly be contended, we think, that it could be construed to create a lien for ten years from the filing of the transcript; but when thus transposed it seems plain that the word "extent," as applied to the duration of the lien, should relate to the time of the rendition of the judgment, corresponding to the time when the limitation commences to run against judgments of the circuit court, and the words mean the same, whether they are transposed or read as written in the statute. Indeed, this is the only construction that can be placed upon this section of the statute and give force to the words. If, as contended

Brown *v.* Wuskoff *et al.*

by counsel, the lien extends ten years from the filing of the transcript, a transcript might be filed at the end of nineteen years from the date of the rendition of the judgment before the justice, and after the expiration of twenty years the judgment would be barred.   And if, during the twenty years, no execution had been issued and returned, and a certificate filed in the clerk's office, as required, no execution could issue after that date, as a judgment can not be revived after twenty years (*Strong* v. *State, ex rel.*, 57 Ind. 428), and the judgment lien could not be enforced by execution.   It is evident to us that it was not contemplated to create a lien that could not be enforced by execution in the ordinary way, or to give validity to judgments rendered before justices for a greater· length of time than to judgments of the circuit court. After the expiration of twenty years the judgment could not be enforced, and a judgment which can not be enforced against property is not a lien upon property.  *Lamb* v. *Shays*, 14 Iowa, 567 ; *Stadler* v. *Allen*, 44 Iowa, 198. To extend the lien ten years from the date of filing the transcript, would be creating or attempting to create a lien without any means of enforcing it.   Judgment liens are created by statute and have only such validity as is given them by statute, and do not extend beyond the time fixed. The provision for the filing of a transcript and for an execution to be issued thereon by the clerk of the circuit court, is but adding additional force to judgments rendered before justices, and providing an additional method for their collection.

We are also referred by counsel to the case of *Waltermire* v. *Westover*, 14 N. Y. 16, which it is most seriously urged is in direct opposition to our decision in this case.   The question decided in that case is not at all like the one in this.   As appears from the case, the statute of New York provides that the lien of a judgment of the common pleas court ceases, as against purchasers in good faith and subsequent incumbrancers, at the end of ten years from the time of docketing, but continues

as against the defendant himself until the statutory presumption of payment arises, at the end of twenty years; and in that case a judgment was rendered before a justice July 25th, 1837, and on July 27th, 1837, a transcript was filed and docketed in the office of the clerk. On the 22d of June, 1843, the clerk issued an execution on the judgment, and delivered it to the sheriff on the 10th day of July, 1843, and on the 12th day of July, 1844, the sheriff, by virtue of the execution, sold the real estate in question. It was provided by statute that a justice's judgment, docketed by a county clerk, "shall be a lien on the real estate of the defendant within the county, in the same manner and with the like effect as if such judgment had been in the court of common pleas."

If you give like force and effect to the words "same effect," in the New York statute, that we have given to the words "same extent," it would extend the lien ten years from the date of the docketing of the justice's judgment, as the New York statute extends the lien of a judgment of the court of common pleas ten years from the date of docketing. But our statute is entirely different, as it extends the lien ten years from the date of the rendition of the judgment. But that question is not decided in the case cited, as only about seven years had expired from the rendition of the justice's judgment to the time of the sale. The statute in that State declared that all actions upon justice's judgments "shall be commenced within six years next after the cause of such action accrued," and the question for decision was as to whether that provision annihilated the lien at the end of six years, and the court held that, as the six years' statute was in terms confined to the remedy by action, it did not operate to annihilate the remedy by execution. It does not appear what the mode of issuing execution was under the New York statute, but it in no way appears that any execution was required to be issued by the justice and a certificate and affidavit filed with the clerk to obtain an execution, as are required in this State. The clerk issued an execution as authorized, and the

Cincinnati, Indianapolis, St. Louis and Chicago R'y Co. v. Lang, Adm'x.

law was no doubt similar to that of the State of Iowa, hereinbefore set out.

This same construction has been placed upon this statute by this court in two other cases: *Martin* v. *Prather*, 82 Ind. 535, and *Yeager* v. *Wright*, 112 Ind. 230. Though it was not discussed and the reasons given for the decision, yet the same construction was given to the statute.

The petition for a rehearing is overruled.

Filed April 26, 1889.