## PETROVITCH v. WITHOLM ET AL.

[No. 11,953.    Filed July 3, 1926.]

1. **JUDGMENT.**—A judgment lien is purely statutory; it begins, continues and terminates at the will of the legislature, and cannot be prolonged by the courts.   p. 147.

2. **JUDGMENT.**—*A judgment lien continues for ten years, and no longer, except when plaintiff is prevented from collecting the judgment by conditions specified in the statute.*—Under the provisions of §659 Burns 1926, §635 Burns 1914, a judgment lien continues for ten years, and no longer, except in the four cases enumerated therein, viz.: (1) Where the judgment plaintiff is restrained from proceeding by an appeal; (2) where the plaintiff is restrained by an injunction; (3) where the plaintiff is prevented from collecting the judgment by the death of the defendant; (4) where the plaintiff is prevented from enforcing the judgment by an agreement of the parties entered of record. p. 147.

3. **JUDGMENT.**—*Lien of judgment was not extended by suit to enjoin enforcement of the judgment where the suit was dismissed after complaint filed and summons issued.*— A judgment creditor was not restrained by injunction from enforcing his judgment although the debtor filed suit to enjoin the sheriff from enforcing it, and summons was issued and served on the sheriff, but returned "not found" as to the creditor, where there was no appearance for him and the suit was subsequently dismissed.   p. 151.

4. **EXECUTION.**—*Statutory method of enforcing judgments must be followed in this state.*—Since the statute (§743 Burns 1926, §716 Burns 1914) provides a legal method of enforcing a judgment, namely, by execution, that method must be followed in this state.   p. 151.

5. **JUDGMENT.**—A judgment lien which has expired under the provisions of the statute cannot be enforced in equity.   p. 151.

6. **JUDGMENT.**—A judgment lien, being created by statute, cannot be converted into an equitable lien.   p. 152.

From Lake Superior Court; *Virgil S. Reiter*, Judge.

Action by Lena Witholm against John Petrovitch and wife. From a decree for plaintiff, the defendant named appeals.   *Reversed.*   By the court in banc.

*Ibach, Gavit, Stinson & Gavit* and *Lester O. Otterheimer*, for appellant.

*Roe & Peterson*, for appellees.

McMahan, P. J.—In April, 1911, appellee Lena Witholm, recovered a judgment in the Lake Superior Court against appellant and his wife, Anna Petrovitch, also an appellee herein. In September, 1921, Lena Witholm filed her complaint to revive said judgment as to both of the judgment debtors. This complaint was in two paragraphs. In 1923, a third paragraph of complaint was filed counting on an equitable lien on certain real estate owned by appellant, alleging that, subsequent to the recovery of said judgment, appellant had gone. through bankruptcy, and had later filed an action to enjoin the levy of an execution upon the real estate described, thereby hindering the plaintiff therein, and hereinafter referred to as appellee, in the collection of her judgment, and asking that the court adjudge that she have an equitable lien upon such real estate and that such equitable lien be foreclosed and the property sold to satisfy such lien. The issues being closed, there was a trial which resulted in a finding and decree in favor of appellee on the third paragraph of her complaint; that, as against appellant, she had an equitable lien on the real estate for the amount of the judgment and that the lien should be foreclosed and the real estate sold to satisfy such lien. The court entered a decree reviving the judgment as against appellee Anna Petrovitch. From the decree declaring appellee has an equitable lien and foreclosing the same, appellant appeals, and contends the court erred in overruling his motion for a new trial. The only specifications in his motion which we need consider are: (1) That the decision is not supported by sufficient evidence; and (2) that it is contrary to law.

The facts as disclosed by the evidence are, in substance, as follows: On April 17, 1911, appellee Lena Witholm obtained a judgment for $369.10 in the Lake

Superior Court against appellant and his wife Anna Petrovitch on an account. Execution was issued on this judgment April 17, 1911, and returned no property found, and not satisfied. The date of the return is not shown. On March 3, 1913, appellant and Anna Petrovitch filed separate complaints alleging that said judgment had been taken against them by default through mistake, inadvertence and excusable neglect. There was a finding and judgment against the plaintiffs on each of these complaints. An execution also came into the hands of the sheriff October 6, 1914, and was returned January 4, 1915, not satisfied. It is not shown when this execution was issued. Another execution was issued on April 11, 1919.

On May 27, 1919, appellant filed his complaint in the Lake Superior Court against appellee Lena Witholm and the then sheriff of Lake county, in which it was alleged that appellant was the owner of the real estate in controversy; that appellee, on April 17, 1911, had recovered a judgment against him by default; that execution had been issued at her instance and placed in the hands of the sheriff who was threatening to levy upon and sell said lot. It also alleged that in January, 1915, appellant filed his petition in bankruptcy, wherein he listed said real estate and claimed the same as exempt; that the said judgment of appellee had been scheduled in the bankruptcy proceedings; that on a hearing in the bankruptcy proceedings, the said real estate had been set off to appellant as exempt and appellee's judgment allowed as a claim, and asking that appellee and the sheriff be enjoined from levying upon said real estate. Summons was issued and served on the sheriff and returned not found as to appellee. There is no showing of any appearance or that steps were ever taken in that action, and the cause was dismissed March 20, 1922. Albert Morris, one of the deputy sher-

iffs, testified that he had a conversation with another deputy sheriff concerning an execution issued by appellee against appellant, and that he advised such deputy to go ahead and sell because the notice did not amount to anything, and because the sheriff had not been enjoined from going on with the sale.

One of the attorneys for appellee testified that the real estate owned by appellant was never worth less than $2,000; that after the court failed to set aside the original judgment, he had an execution issued and took the matter up with an attorney representing appellant who agreed to give a mortgage to cover the judgment. This appears to have been prior to the proceedings in bankruptcy. There is also evidence that appellee's attorney, in 1919, demanded of the sheriff that he levy on appellant's real estate and sell it and that the sheriff refused to do so because of the action then pending asking for an injunction.

Section 659 Burns 1926, §608 R. S. 1881, is as follows: "All final judgments in the Supreme and circuit courts for the recovery of money or costs shall be a lien upon the real estate and chattels real liable to execution in the county where judgment is rendered for the space of ten years after the rendition thereof, and no longer, exclusive of the time during which the party may be restrained from proceeding therein by an appeal or injunction, or by the death of the defendant, or by agreement of the parties entered of record."

This lien is purely statutory. It is created by statute. Its very existence and the rights of the judgment creditor are and must be measured by the statute creating the lien. It begins, it continues, and terminates with the will of the legislature. *Houston* v. *Houston* (1879), 67 Ind. 276. It continues ten years and no longer, with the four exceptions named in the statute and cannot be prolonged by order of court.

Our Supreme Court has spoken in no uncertain terms upon this question. In *McAfee* v. *Reynolds* (1891), 130 Ind. 33, 38, 28 N. E. 423, 18 L. R. A. 211, 30 Am. St. 194, the court said: "The proposition of appellant that the lien of a judgment as fixed by the statute can not be prolonged by the courts is indisputably correct. *Wells* v. *Bower*, 126 Ind. 115; *Shanklin* v. *Sims*, 110 Ind. 143; *Brown* v. *Wuskoff*, 118 Ind. 569; *Applegate* v. *Edwards*, 45 Ind. 329; *Albee* v. *Curtis*, 77 Iowa 644; *Hutcheson* v. *Grubbs*, 80 Va. 251; *Boyle* v. *Marconey*, 73 Iowa 70; *Spencer* v. *Haug*, 45 Minn. 231; *Newell* v. *Dart*, 28 Minn. 248. A judgment lien is the creature of statute, owing its life and force entirely to legislation. It has, indeed, been said that a judgment is a charge on land, but not, in strictness, a lien.  *   *   * A party who secures a judgment obtains such a charge upon land as the statute gives and nothing more, for it is clear that he can acquire only what the statute creating the right vests in him. Our statute declares that the lien shall continue for ten years, and 'no longer,' thus definitely and positively limiting the duration of the lien. As no court is above the law, and as all courts must enforce the law as it is written, it necessarily results that a lien, created and limited by statute, can not be extended beyond the period fixed by the lawmakers. A party may forfeit a right to a decree extending its life beyond the statutory period. It is this right which the appellee possessed when she began her suit, and not a right to have a new lien created, nor an existing one prolonged beyond the limit fixed by law. Courts can not create a judgment lien on land, nor can they fix its duration, since that is the prerogative of the Legislature. No authority for making a judgment a lien on land, or for designating its incidents, can be found in the common law, since at common law a judg-

ment was not a general lien upon that species of property." See *Johnson* v. *Hess, Sheriff* (1890), 126 Ind. 298, 311, 25 N. E. 445, 9 L. R. A. 471, where the court said: "A judgment lien is strictly a legal lien, general in character, resting upon statute."

In *Wells* v. *Bower* (1890), 126 Ind. 115, the court, referring to the statute, said: "It expressly provides that the judgment shall be a lien for ten years, and no longer, except in certain cases, and none of the exceptions are applicable in this case. If a party desires to derive the benefit of his judgment lien he must enforce it during its lifetime, and if he fails to do so he derives no benefit of the lien, and unless the judgment plaintiff's right to enforce his lien is suspended on account of some of the reasons stated in the section the lien expires at the end of ten years, and he obtains no title by virtue of the lien through a sale made after that date." To the same effect see *Brown* v. *Wuskoff* (1889), 118 Ind. 569, 19 N. E. 463, 21 N. E. 243; *Shanklin* v. *Sims* (1887), 110 Ind. 143, 11 N. E. 32; *Kinney* v. *Dodge* (1895), 101 Ind. 573.

Judgment creditors are in no sense purchasers. *Boyd* v. *Anderson* (1885), 102 Ind. 217, 220, 1 N. E. 724.

In *Applegate* v. *Edwards* (1873), 45 Ind. 329, 335, it is said that the lien of judgments is regulated in this state by statute, and, after quoting §659, *supra,* the court said: "The general rule is, that the lien continues for ten years, and no longer, but there are four exceptions: 1. Where the party is restrained from proceeding by an appeal. 2. Where the plaintiff is restrained by an injunction. 3. Where the plaintiff is prevented from collecting the judgment by the death of the defendant. 4. Where the plaintiff is prevented from enforcing the judgment by an agreement of the parties entered of record. * * * By the above section of

the statute, the lien of all final judgments in the Supreme, circuit, and common pleas courts, is limited to ten years from the time of the rendition thereof."

And as was said by this court in *Matthews* v. *Wilson* (1903), 31 Ind. App. 90, 94, 67 N. E. 280: "At common law judgments were not liens upon real estate, and they would not be in Indiana, except they were made so by the legislative enactment."

And in *Taylor* v. *McGrew* (1902), 29 Ind. App. 324, 64 N. E. 651, it is said: "No authority for making a judgment a lien on land can be found in the common law. A judgment lien is a creature of the statute, and its duration is fixed. A court has no authority to extend the life of the lien beyond the term fixed by the legislature." And continuing on page 328, the court said: "The statute fixes the life of the lien at a certain period unless the judgment creditor is restrained from proceeding on his judgment in some manner designated in the statute. The legislature has fixed the life of all judgment liens at ten years and 'no longer,' exclusive of certain designated periods of time. We are not authorized to suspend the running of the time during any period not designated by the statute. The judgment debtor died August 26, 1894, and 'within ten days thereafter' letters testamentary were granted upon his estate, or not later than the 5th day of September, 1894. For the year following the judgment debtor's death, these judgment creditors were restrained from proceeding on their judgments *by the death of the defendant.* Except during this period, they had the power to proceed upon their judgments, and if there was any delay it must be held to have been voluntary. As they had the power to act, it can not be said that they were restrained from acting."

As was said in *Hemen* v. *Rinehart* (1906), 45 Wash. 1, 87 Pac. 953: "The existence, validity and extent

of a judgment lien are entirely dependent upon statutory enactments."

The statute is that the judgment shall be a lien for ten years, and no longer, exclusive of the time during which the party was hindered by some one of the four things named in the statute. As applied to this case, in order to extend the lien of the judgment, it was necessary that appellee be hindered or delayed in enforcing her judgment by reason of an *injunction.* When a party has power to act, he is not restrained. *Jones* v. *Detchon* (1883), 91 Ind. 154, 157. Appellee was not restrained from proceeding to enforce her judgment by *injunction.* She at all times had power to act.

At common law, except for debts due the king, the lands of the debtor were not liable to the satisfaction of a judgment against him, and consequently no lien thereon was acquired by a judgment. But, in this state, judgments rendered in the circuit and superior courts are by statute made a lien upon the real estate liable to execution in the county where the judgment is rendered. Section 743 Burns 1926 provides that the party in whose favor the judgment is rendered, at any time within ten years after the rendition of the judgment, may have an execution issued to enforce it. Section 744 Burns 1926 provides that after the lapse of ten years, an execution can be issued on leave of court. Since the lien of a judgment is a statutory lien, and since the law provides a legal method of enforcing such lien, the legal method so provided must control. While the lien of a judgment may be enforced in a court of equity, equity follows the law. As was said in *Coles' Admr.* v. *Ballard* (1883), 78. Va. 139, in speaking of statutes of limitations: "No principal is better established, or more uniformly acted on in courts of equity, than that in respect to the statute of limita-

tions—*equity follows the law*—that is to say, if a legal demand be asserted in equity, which at law is barred by statute, it is equally barred in a court of equity; and if not barred by statute at law, neither is it barred in equity."

And we think it is safe to say that when a legal right or demand is barred at law, an equitable demand of like character based upon a former legal right will be barred in equity. This rule was applied in *Hutcheson* v. *Grubbs* (1885), 80 Va. 251, where an attempt had been made in a court of chancery to enforce the lien of a judgment after it had ceased to be enforceable at law. In disposing of the question then under consideration, the court, at page 258, said: "It is needless to multiply words and authorities upon a proposition, which we deem too plain to admit of doubt. Our conclusion, therefore, is that the lien of a judgment is a legal lien, conferred by the express terms of the statute, though enforceable in equity, and ceases with the life of the judgment upon which it is founded." To the same effect see *Sutton* v. *McKenney, Trustee* (1886), 82 Va. 46; *Werdenbaugh* v. *Reid* (1882), 20 W. Va. 588; *Shipley* v. *Pew* (1883), 23 W. Va. 487; *Smith* v. *Meridith* (1869), 30 Md. 429.

A judgment dead in law and barred by statute is barred in equity. *McCarty* v. *Ball* (1887), 82 Va. 872, 1 S. E. 189. "It is well settled that the lien of a judgment can not be enforced in equity after the right to enforce the judgment at law has ceased to exist." Black, Judgments §468.

"The duration of judgment liens," said the court in *Smith* v. *Schwartz* (1899), 21 Utah 126, 60 Pac. 305, 81 Am. St. 670, "is dependent upon the express will of the Legislature, and the courts have no power to extend them. Nor have they the right when the language employed by the Legislature is unambiguous, by construc-

tion, to make exceptions or qualifications to meet the hardship of particular cases. To do so would be a usurpation of legislative power."

Upon what principal of equity jurisprudence can it be claimed that appellee had an equitable lien? We know of no principal or authority to sustain the right of appellee to an equitable lien or to the right to "foreclose" such lien. We venture the assertion that a judgment lien—a lien created by statute, can never be converted into an equitable lien.

. The Supreme Court of Michigan, in passing upon the power of a court of equity to enforce the collection of a judgment lien, said: "The palpable purpose of the bill is to have the chancery court declare and enforce collection of a statutory lien. Although there is some confusion of the law upon the subject in some jurisdictions, it has been determined in this State that while the equity court, having acquired jurisdiction for other purposes, may, as an incident to general relief granted, order property sold to satisfy a lien, it has no jurisdiction to enforce a lien, either common law or statutory, upon a bill filed solely for that purpose * * *." *Marshall* v. *Wabash R. Co.* (1918), 201 Mich. 167, 167 N. W. 19, 8 A. L. R. 435. See, also, *Adline Mfg. Co.* v. *Phillips* (1898), 118 Mich. 162, 76 N. W. 374, 42 L. R. A. 531, 74 Am. St. 380; 15 R. C. L. 809, §273.

Conceding that a court of equity is a court of conscience, we still must act in accordance with the settled rules of equity jurisprudence and not in violation of such rules. The result of the decree of the trial court is to hold that under the evidence in this case, the lien of a judgment, on a contract rendered in 1911, was by reason of the facts proved, converted into an equitable lien. Appellant, if a resident householder, would have been entitled to an exemption of $600 on a sale under an execution issued on the original judgment. Can he have

such an exemption under a decree foreclosing an equitable lien on his real estate and ordering that real estate sold to satisfy the lien? If a sale is held under the decree in this case, will it be a sale under the decree of court, or will it be on an execution issued on the original judgment?

In *Gardenshire* v. *King* (1896), 97 Tenn. 585, 37 S. W. 548, a judgment creditor filed a bill in equity seeking aid in making effectual a judgment lien. The parties in that case had entered into an agreement that execution should not issue for a period of ten months. Execution was issued and the action seeking the aid of the court was commenced shortly before the lien of the judgment expired. The court, in speaking of the duty of the holder of the judgment, said: "It is apparent that he must be prepared to maintain the continued existence of his judgment lien, because it is only with that he antedates these defendants, who have thus secured their liens by conveyances and otherwise." And, after referring to the statute giving the lien, the court continued, saying: "The rights of complainant depend upon these sections of the Code. Without the aid of the statute the creditor has no lien on the real estate of his debtor, as none existed at common law." In speaking of the agreement which prevented the judgment creditor from issuing an execution during a certain period, the court, on page 588, said: "This is a misfortune which the law has made no provision for. Nor can he extend or perpetuate it by resorting to a Court of Equity."

In *Ruth* v. *Wells* (1900), 13 S. D. 482, 83 N. W. 568, 79 Am. St. 902, it was held that a court of equity could not prolong the life of a judgment lien beyond the period fixed by statute. The court, in discussing a statute creating a judgment lien, said: "Courts of equity

must follow the statute creating a judgment lien, and, when the time of its duration has expired, it is not enforceable, either at law or equity." After citing *Mc-Afee* v. *Reynolds, supra,* in support of the above statement, the court said: "And when, in the meantime, a lien sought to be enforced on land was rendered lifeless by positive and inexorable law, the action cannot be maintained, because the right existing only by force of statute has been by force of statute destroyed and lost by lapse of time."

If upon the dismissal of appellant's complaint for an injunction, appellee had proceeded to sell the property on execution, under the theory that the provision of the statute limiting the time during which the judgment was a lien, had been interrupted by the action to enjoin, and appellant was by complaint or answer seeking to prevent a sale, appellee without doubt would be in position to set up the action to enjoin by a plea of equitable estoppel. Whether such a plea under the facts in the instant case would be sufficient to sustain such a plea is not now before us, and need not be considered.

In *Hensen* v. *Peter* (1917), 95 Wash. 628, 164 Pac. 512, L. R. A. 1918F 682, where the judgment creditor had by injunction prevented a sale on execution and where a sale would have been made within the period limited by law but for the injunction, it was held that the time lost by reason of the injunction should be excluded from the computation of the time within which the judgment could have been enforced. The holding in that case is overwhelmingly sustained by the authorities. See *Pultency* v. *Warren* (1801), 6 Vesey Jr. Rep. (Eng.) 73; *Work* v. *Harper* (1856), 31 Miss. 107, 66 Am. Dec. 549; *Sugg* v. *Thrasher* (1855), 30 Miss. 135; *Overton* v. *Perkins* (1828), 8 Tenn. (4 Peck) 366; *Wakefield* v. *Brown* (1888), 38 Minn. 361, 37 N. W.

7,88, 8 Am. St. 671; *Steele* v. *Bliss* (1911), 166 Mich. 593, 132 N. W. 345, Ann. Cas. 1912D 1020, 37 L. R. A. (N. S.) 859.

Appellee, by her third paragraph of complaint, has mistaken her remedy. Her remedy, if any, was by sale on execution issued on the judgment. If her right to sale on execution has been lost, it is a misfortune for which we are not responsible. Appellee may still have execution issued, if such right has not been lost by lapse of time.

Judgment reversed, with directions to sustain the motion for a new trial, and for further proceedings consistent with this opinion.

Nichols, J., not participating.