[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 511 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 512 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 513 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 514 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 515 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 516 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 517 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 518 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 519 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 520 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 521 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 522 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 523 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 524 
By the law of this state in respect to the registration of mortgages, which was in force at the time when the mortgage under which the plaintiff claims, was executed and attempted to be put upon record (May 7th, 1817), it was provided "that no mortgage nor any deed, conveyance or writing in the nature of a mortgage, shall defeat or prejudice the title or interest of any bonafida purchaser of any lands, tenements or hereditaments, unless the same shall have been duly registered as therein aforesaid. (1R.L., 373, § 2.) Section 1, provided, that in the register shall be entered the names of the mortgagors and mortgagees, the dates of the respective mortgages, the mortgage money, the time or times when payable, the description and boundaries of the property mortgaged, the times when such mortgages are registered, and a minute of the certificate of the proof or acknowledgment thereof. Section 4, provided, that it should not be necessary on registering any mortgage to record or register at length the certificate of the proof or acknowledgment thereof.
The question then arises whether, in this case, a due registration of the mortgage in suit is shown. The entry upon the register commences as follows: "Registered for and at the request of Thomas Bloodgood, of the city of New-York (acting executor to the estate of Thomas Tom, deceased). Memorandum, that on the 1st day of May, 1817, Elias Kane and Deborah his wife, for and in consideration of the sum of $13,000, hath mortgaged all those two tracts, c., describing *Page 525 
them. Provided always, and these presents are upon this express condition, that if the said Elias Kane, his heirs, executors and administrators, do and shall well and truly pay or cause to be paid, unto the said party of the second part, his certain attorney or attorneys, heirs, executors, administrators or assigns, the sum of $13,000, c., with lawful interest, in the manner particularly specified in the condition of his certain bond or obligation bearing even date herewith, executed by the said Elias Kane, one of the same parties of the first part, to the said party of the second part, that then, c., these presents, c., shall cease and be void." Then follow a power of sale in the usual form to "the said party of the second part," and the registry concludes as follows, "which said mortgage was on the 6th day of May, 1817, duly proved by Elias Kane and Deborah Kane his wife, the mortgagors within named, before Thomas Bridgen, one of the masters in chancery of the State of New-York. Registered the 7th day of May, 1817, at six o'clock A.M., Jellis A. Fonda, clerk." The register contains no mention of the name of the party of the second part to the mortgage except as above set forth.
The first objection made to the sufficiency of the registry is, that the name of the mortgagee is not entered. It seems to me impossible to say that in this respect the statute is complied with. It is true that the name of "Thomas Bloodgood (acting executor," c.,) who was in fact the mortgagee, appears at the commencement of the registry, but the entry must be taken as it stands. So regarded, all that the registry affirms is that the mortgage was registered for and at Bloodgood's request. Whether it was a mortgage to him or to Thomas Tom whose executor he was, or to some third person, and assigned to Tom in his lifetime, or to Bloodgood after his decease, the entry upon the register affords no means of determining, nor grounds even of conjecturing. It is no better, therefore, than if the name had been entirely omitted. I do not think we are at liberty to speculate upon *Page 526 
the materiality of the omission. The legislature considered a statement of the mortgagee's name necessary, and have prescribed in terms that it should be stated. They had the power to consider and determine what was material to be stated, and we have no power to review their determination. In this particular the register is defective. It cannot be aided by the entry of the name of the mortgagee in the index of mortgages kept in the clerk's office. In no event could that entry be taken to be a part of the registry. It does not appear when it was made in point of fact, and no law required or authorized it to be made until the passage of the act (ch. 313, Laws of 1826), which provides for the making of indexes of deeds and mortgages on record in county clerks' offices.
In the second place it is objected that the time or times when the mortgage is payable are not stated. The register contains everything upon this subject which is contained in the mortgage, and if it were material to the determination of the case, I should be inclined to think that sufficient, although there is much force in the argument that the sum for which the mortgage was given might, on the same ground, be allowed to be omitted by a similar reference to the condition of the bond. It is next objected that the register contains no sufficient minute of the certificate of the proof or acknowledgment of the mortgage. The minute is that the mortgage was duly proved by Elias Kane and Deborah his wife before Thomas Bridgen, master in chancery, and the date is given. I think the object of the provision in the statute was to enable the party examining the records to determine, upon inspection of the minute of the certificate, whether the acknowledgment or proof was in fact sufficient. To that end it is necessary that the substance of the proof or acknowledgment should appear. In this case, besides the objection that the minute is of a proof and not an acknowledgment, which the certificate on the mortgage proves to have been the fact, the clerk has completely substituted his *Page 527 
judgment for that of the party. His minute is, that the mortgage was duly proved and that is all the information which is given as to the manner of the proof, or rather of the acknowledgment. This is quite insufficient to enable any one to form a judgment upon the sufficiency of the acknowledgment; and unless I have mistaken the intent of the statute, is conclusive against the registration. Having thus arrived at the conclusion that the registration is not sufficient under the statute, the next inquiry is whether the defendants are bona fide purchasers of the lands in question and so entitled to be preferred to a mortgagee whose mortgage is not duly registered.
It is not contended on behalf of the appellants, nor is there upon the evidence any ground to contend, that any of the parties interested in the lands covered by the mortgage had any actual notice of its existence.
Nor is it contended that the Schenectady and Troy Railroad Company have not paid a valuable consideration, nor upon the evidence is there any room so to contend.
As to the widow and heirs of John Whittick it is contended that John Whittick was not a purchaser for a valuable consideration, and that they are therefore not so situated as to avail themselves of the defective registry.
The premises of which these parties are now in possession and the title to which it is claimed is now vested in them free from the lien of the plaintiffs' mortgage, are a part of two hundred acres or thereabouts, of lands, which were purchased by one Salmon H. Foster, at a sheriff's sale in the year 1830, and conveyed to him by the sheriff by deed dated November 4th, 1831, and recorded on the same day. The deed recites that the lands were struck off to Foster at $1,390, and acknowledges the payment of the consideration.
On the 11th day of November, 1831, Foster and his wife conveyed the same premises to John Whittick. The deed acknowledges the payment of the consideration money, $1,390, and it was recorded November 22d 1831. *Page 528 
John Whittick was in possession under these conveyances, claiming title until his death, when his widow and heirs, the parties whose interest we are now considering, succeeded to his rights.
The case contains no other evidence to show a purchase for value by Foster or Whittick, and the question then is, whether the recital in the sheriff's deed of the receipt of the consideration from Foster, or the like recital in the deed from Foster to Whittick, is competent and sufficient evidence, primafacie, to show the payment of value upon an issue as to their being bona fide purchasers.
The only case which I have seen which seems to bear upon this point is Jackson v. McChesney (7 Cow., 360). It was an ejectment, brought upon a mortgage given by one Groves to the lessor of the plaintiff. Prior to the registry of the mortgage and on the 7th January, 1811, Groves quit-claimed to one Wright by a conveyance acknowledging the receipt of the consideration money, about $200. There was no proof of actual payment. The plaintiff insisted that such proof was necessary to protect the vendee as a bona fide purchaser. WALWORTH, C.J., held that the acknowledgment in the deed was prima facie evidence of payment. The supreme court held the ruling to be right. SUTHERLAND, J., delivered the opinion of the court. "The acknowledgment in a deed of the receipt of the consideration money is prima facie
evidence of its payment. It is equivalent to, and like a receipt for money. It is liable to be explained or contradicted, but until impeached it is legal and competent evidence of payment. Nor is its operation confined to the immediate parties to the deed. It does not operate by way of estoppel, but as evidence merely, and must have the effect of sustaining the deed by establishing prima facie the consideration for which it was given, against any person who may seek collaterally to impeach it. (Kip's executor v. Deniston, 4 John., 26; Shepard v.Little, 14 John., 210; Thallhimer v. Brinckerhoff, 6Cow., 102; 2 Phil. Ev., 62, *Page 529 note b.) When a bill is filed to set aside a deed as fraudulent, and the grantee in his answer alleges that he was abona fide purchaser, without notice of the plaintiffs' claim, he must aver and prove, not only that he had no notice of the plaintiffs' rights before his purchase, but that he had actually paid the purchase money before such notice. Even if the purchase money be secured to be paid, yet if it be not in fact paid before notice, it will not sustain the plea of a purchase for a valuable consideration without notice. But there is no analogy between those cases and an action of ejectment, where the strict legal title must prevail. * * *
Wright then was a bona fide purchaser without notice of the mortgage, and held the land discharged from its lien."
This case was decided under the act of 1801, concerning mortgages, which was in its terms as to this point, identical with the act of 1813, which applies to the case before us.
I do not see, upon general principles, how the acknowledgment of a fact in a deed can be deemed evidence of the fact against strangers, and I feel almost as much difficulty in admitting that a recital in a deed can be evidence against one claiming under the same grantor by a prior title. (C. H., notes, 1236, andcases cited.) This I think must be taken to be the utmost extent to which Jackson v. McChesney can be conceded to go, for though the language of the learned judge is much broader, the case before him did not require anything more. Kip v.Deniston, holds, that an acknowledgment in a conveyance by two trustees of the receipt of the consideration money, does not render one responsible for the money received and misapplied by the other. Shepard v. Little, holds, that the acknowledgment of the payment of the consideration in a deed does not preclude the party in an action to recover the consideration, but that he may by parol show it to be unpaid. Thallhimer v.Brinckerkoff, holds that the acknowledgment by an attorney of the receipt of the consideration money in a deed executed by him as attorney, is prima facie evidence of the receipt of the money *Page 530 
by the attorney. But I do not see that the doctrine of either of these cases goes at all to sustain the point to which they appear to be cited in Jackson v. McChesney.
I do not think, therefore, that we have any authority for saying that in a proceeding in chancery to foreclose a mortgage the recital in a sheriff's deed upon a sale on execution against the mortgagor on a judgment subsequent to the mortgage, is evidence of payment of the consideration, against the prior mortgagee.
If the court differ with me, however, in this conclusion, and are of opinion that such recitals are evidence, prima facie, of a valuable consideration paid, then the principle will go far enough to cover not only the case of Whittick's widow and heirs, but also of Mallams, who, by the same sort of evidence is shown to be a purchaser for value from Whittick.
The residue of the case I shall consider upon both suppositions, first, assuming that all these persons paid value upon their purchases and had no actual or constructive notice of the prior mortgage.
It is objected by the complainants, that under the sheriff's deed the title to the premises did not pass by reason of the uncertainty of description in the deeds. If this objection shall prevail it will apply to the cases of all the defendants against whom the appeal has been taken.
The sheriff's deed to Whittick, after reciting that he exposed to sale all the right, c., of, in and to all that certain piece or parcel of land, being part of the patent known as Swits' patent, situate in the town of Niskayuna, "bounded on the north by the Mohawk river, on the south and east by lands belonging to Derick Van Vranken and others, and on the west by lands of the said Derick Van Vranken, and others, and supposed to contain four hundred acres; whereof about one hundred acres were struck off to the said John Whittick for the sum of $450 being the highest sum bid for the same," proceeds as follows: "Now know ye therefore that I the *Page 531 
said sheriff aforesaid for and in consideration of the said sum of $400 to me in hand paid, do grant, bargain and sell the before mentioned premises to the said John Whittick, his heirs and assigns forever. Dated, October 15, 1831."
The sheriff's deed to Foster, dated November 4, 1831, contains a similar general description, but states that "two hundred acres were struck off to" him, for $1,390, and grants, in the same manner as in the last mentioned conveyance, "the before mentioned premises."
In point of fact at the time of the sale there were two distinct parcels of land in the town of Niskayuna, and in Swits' patent, belonging to Kane and wife, lying south of the Mohawk river, and separated from each other by a piece of land of about eighty acres belonging to Derick Van Vranken. The western piece, consisting of one hundred and eleven acres, three roods and twenty-three rods, was taken possession of by John Whittick under his purchase. The eastern piece, consisting of one hundred and ninety-nine acres, two roods and four perches, was regarded by the parties as purchased by Foster, and was, as has been already stated, possessed by Whittick, to whom Foster conveyed his purchase.
The description in the sheriff's deeds of the property exposed for sale is of a single parcel supposed to contain four hundred acres. The town and the patent agree with the parcels before mentioned. It is described likewise as lying on the south side of the Mohawk river, as those parcels were actually situated. It is said to be bounded on the south and east by lands of Derick Van Vranken and others. The western parcel of one hundred and eleven acres, was bounded on the south and east by lands of Derick Van Vranken. The eastern parcel was bounded on the south by lands of Derick and Claus Van Vranken, but upon the east it was bounded by the lands of Peter N. or Garret I. Van Vranken. The sheriff's deed makes Derick Van Vranken's land the western boundary. It was the western boundary of the eastern parcel, and the eastern boundary of the western *Page 532 
parcel, which was bounded on the west by the lands of Thompson.
The general rule in regard to the construction of the description of the premises in a deed is one of the utmost liberality. The intent of the parties, if it can by any possibility be gathered from the language employed, will be effectuated. To this end parts of the description may be rejected, though upon the face of the deed they seem as material as the parts which are left. This only is requisite, that after subjecting the description to every modification which the actual condition of the premises may require, there must be left some substantial designation of the thing to be conveyed, so that the court can see, looking at the property in the condition in which it was at the time of the deed, that the description can be fitted to it and was intended by the parties to relate to it. (Loomis v. Jackson, 19 John., 449, and cases there cited,c.; Rollin v. Pickett, 2 Hill, 552; Jackson v. Marsh, 6Cow., 281.) Looking at the description in the sheriff's deeds, I confess that I have found myself wholly unable to identify the particular parcels sold to Whittick and to Foster. Two hundred acres are struck off to one and about one hundred to the other, but there is no clue whatever to determine which acres were sold to either, nor do I find any general description of the land except that which is to be gathered from the designated boundaries. It is not said to be or to have been the land of Kane, or of any one else. The sheriff exposed to sale, as the deed recites, "all the right of the said Elias Kane and others" (the other defendants, I suppose), of, in and to all that certain piece or parcel of land, supposed to contain four hundred acres. If Kane had desired to ascertain what lands had been sold upon the execution, nothing in the deed would have given him the least ground to imagine that the land west of Derick Van Vranken's land, had been sold. The case seems to me to come within the qualification of the general rule stated by the supreme court inJackson v. Clark (7 John., 223). *Page 533 
"If there are certain particulars once sufficiently ascertained which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not vitiate the grant. But when the description of the estate intended to be conveyed includes several particulars, all of which are necessary to ascertain the estate to be conveyed, no estate will pass except such as will agree to every part of the description." The boundaries are the only means of ascertaining the premises. The only western boundary is the land of Derick Van Vranken; east of that boundary was a parcel of one hundred and ninety-nine acres of land which appears to have belonged to Kane and wife. In this parcel I am unable to locate the land of about one hundred acres bid off by Whittick, and as the deed to him preceded that to Foster, which was of two hundred acres of the same parcel, I am equally unable to determine where that was to be found. Even if these deeds could be sustained between private parties, I think as conveyances by a sheriff they are not sufficient. The distinction was adverted to by the supreme court, in Jackson v.Rosevelt (13 John. R., 97). The court say: "The least that can be required of the officer in making the sale, is, so to locate the lands as to afford means to the bystanders and bidders of informing themselves as to the value." I see no way in which a party entitled to redeem could exercise his right as to lands sold in this manner by a sheriff. Certainly, if the certificate of sale was in the terms of the subsequent deed, a party would look in vain to find what two hundred acres were struck off to Foster, and what "about one hundred" were bought by Whittick. If the court agree with me in this conclusion, then none of the defendants have acquired any title under the sheriff's deeds, and as against them, the mortgage, though unregistered, is effectual.
If, however, the deeds from the sheriff should be deemed sufficient in form to convey the title of the defendants in the execution, two other questions remain to be considered. *Page 534 
The first is, whether a misrecital of the execution in the sheriff's deed will prejudice the right of the purchaser.
The decree of the court of chancery on which the execution was issued was made in a suit in which John Whittick was plaintiff and Elias Kane and Deborah his wife, Theodore Van Schellyne, Rensselaer Van Schellyne, Cornelius Van Schellyne and Elizabeth Van Schellyne (by Cornelius Van Schellyne Kane, their guardianad litem), and Daniel Rogers, Jr., and Samuel Sherwood, were defendants. It bore date August 28, 1829, and awarded to the complainant execution for $4,235.24½ with interest from June 21, 1829, together with costs to be taxed, against the goods and chattels, lands and tenements of the said defendant's, Elias Kane and Deborah Kane his wife, and against the lands and tenements whereof Dirck Van Schellyne, named in the bill of complaint, died seised. The execution itself is not in evidence, but the complainant has admitted, that in May, 1830, an alias fi. fa.,
was issued to the sheriff of Schenectady, on the said decree; that it has not been returned and cannot be found. I suppose that this admission must be taken to admit an execution warranted by the terms of the decree.
The sheriff's deed to Whittick recites an alias fi. fa., out of chancery, dated May 25, 1830, against the goods and chattels, lands and tenements of Elias Kane and Deborah his wife, and all the other parties to the suit by name, and for want of personal property commanding him to make the amount, of the lands and tenements whereof the said Elias Kane and Deborah his wife, and Theodore Van Schellyne, Rensselaer Van Schellyne, Cornelius Van Schellyne Kane, their guardian ad litem, and David Rogers, Jr., and Samuel Sherwood, were seised, on the 25th day of May, 1830. The deed to Foster contains nearly the same departures from the decree, with the additional statement that the decree was in favor of Salmon H. Foster. I am inclined to the opinion, that these misrecitals, though of so gross a character, will not prejudice, where the sheriff actually had (as he must in this *Page 535 
case be taken to have had), authority by the decree and execution to make the sale, and where he appears to have acted upon that authority. Jackson v. Pratt (10 J., 397), and Jackson v.Streeter (5 Cow., 530), distinctly recognize this principle, that a misrecital of an actual power shall not prejudice.Jackson v. Roberts (11 Wend., 427), recognizes these cases as correctly decided. The other question above alluded to, is, whether the title of the purchaser upon execution on the decree before mentioned does not override the title derived from Kane and wife, and Dirck Van Schellyne, by the mortgagee, upon the ground that the decree is founded upon the liability of the defendants as devisees of Cornelius Van Schellyne to one of his creditors. This position, which seems to be advanced with some confidence by the counsel of the defendants, makes it necessary to state the nature and subject of the suit in which the decree was rendered.
The ancestor of John Whittick, the complainant in that suit, conveyed certain lands to Cornelius Van Schellyne by deed absolute, intended as a mortgage. Cornelius Van Schellyne died, leaving a will by which all his estate was devised to his daughter Deborah, wife of Elias Kane, and to his son, Derick, as tenants in common, and his said son and son-in-law were appointed executors. He died prior to January 1, 1813, seised of the lands conveyed to him by Whittick, as above mentioned, and also of the lands afterwards mortgaged to Bloodgood. His devisees conveyed the Whittick lands to Rogers and Sherwood, upon a sale to them. In 1821, Whittick, the complainant, filed his bill against Kane and wife, Dirck Van Schellyne and Rogers and Sherwood, stating the foregoing facts, and also that Rogers and Sherwood were notbona fide purchasers, and praying an account and other relief. Before the hearing of the cause, Dirck Van Schellyne died, and the suit was revived against his children, Theodore, Elizabeth, Rensselaer, and Cornelius. In October, 1828, a decree was made, declaring the conveyance a mortgage, and that Rogers and Sherwood being bona *Page 536 fide purchasers could not be disturbed in their title, and directing an account of the original debt from Whittick, and of the payments on account thereof, of the rents and profits of the lands, and of the purchase money received from Rogers and Sherwood, and an inquiry whether the heirs of Dirck Van Schellyne had received anything from the estate of their father. The master's report, dated June 30, 1829, showed a balance due to Whittick of $4,235.24. The amount as stated in the account, with which the defendants were charged for the price and interest thereon received on the sale to Rogers and Sherwood was $4,804.16, and as the whole balance due was less than this sum, it is apparent that at the death of Cornelius Van Schellyne, he had not been paid the whole debt due from Whittick, and held the land therefore as mortgagee in possession, with his mortgage debt unpaid. Whittick, the complainant, was therefore in no sense his creditor. Upon the coming in of the master's report, the cause was again brought to a hearing, and the report confirmed and execution thereupon awarded, as has been before stated. It is evident that this decree was founded upon the personal liability of Kane and wife, and Dirck Van Schellyne, by reason of their sale of the land, and was not founded upon a debt of Cornelius Van Schellyne. This ground, therefore, fails the defendants. There is nothing in the nature of Whittick's claim which gives to the decree in his favor a priority over the mortgage to Bloodgood.
Certain other grounds are taken by the defendants against the plaintiff's right to recover, of which that most relied upon is, that the debt for which the mortgage was given has been paid.
In order to make this out, it is contended that the original debt to Thomas Tom was due from E. Kane Co., and it is argued that this debt must be presumed to have been paid, as the bonds of E. Kane Co. did not come into the hands of Peck, the present plaintiff. It appears from the inventory of Tom's estate, that E. Kane Co. were indebted to him *Page 537 
upon bond in the amount of $13,141, and no claim appears upon that inventory against Elias Kane alone. In 1828 Elias Kane was discharged under the insolvent act. In his petition and inventory he stated that the debt to Bloodgood arose from money loaned by Thomas Tom to E. Kane Co., about 1804. He says "the original amount was about $13,000, and on the 1st May, 1817, I gave my own bond to Bloodgood (T. Tom's executor) secured by a mortgage; part of the mortgaged property has been sold and the remainder is not worth more than the balance due on the bond." The balance due on account of principal he states at $5,890.83. This latter paper is one of the defendant's (The Troy and Schenectady Railroad Co.'s) exhibits. Without it, and I hardly think it evidence against the plaintiff, no sort of case is made out from which we should be authorized even to conjecture that the debt might be paid. Regarding it as evidence, it seems to me to favor the supposition that when E. Kane gave his bond in 1817, the personal responsibility of the other original debtors was discharged. Nor is there anything in the delay to prosecute the mortgage which creates a presumption of payment. The bond became due in 1820, and the foreclosure suit was commenced in 1846. By the indorsements upon the bond, it appears that the interest was paid up to 1826, and after that two further payments were made, one October 24, 1826, of $4,609.17, the other of $2,500, January 8, 1827. This last payment was also proved by the witness who handed the money to Bloodgood. On this branch of the case I have no hesitation as to the correctness of the conclusion that the bond and mortgage have not been paid, and are not subject to any presumption of payment.
The only remaining point which I think it necessary to consider is the objection that the plaintiff does not show any title to the bond and mortgage, and that the personal representatives of Bloodgood are necessary parties. The bond to Bloodgood was not in terms to him as acting executor of *Page 538 
Thomas Tom, but only added the words "acting executor," c., to his name. Upon its face, therefore, it was at least doubtful whether the bond was his own property or that of the estate of Thomas Tom. He might undoubtedly have proceeded upon it in chancery as executor, averring that it belonged to the estate. The plaintiff makes title by no averment. He does not allege that it belonged to Tom's estate. That question is one in which Bloodgood's personal representatives have an interest, and in which also the defendants have an interest, for no decree in this suit against them would be any protection in a suit by Bloodgood's personal representatives. If in such a suit it should turn out that the bond and mortgage were Bloodgood's, the decree here would be no answer to the claim.
The only statement in the answers which can be construed as a setting up of these objections is the phrase, "they further answer and say that the complainant cannot recover any money or have any decree in his favor on the mortgage stated in the bill." I do not think this was such a statement of the objection as to put the plaintiff in any way upon his guard, and so to influence us in the exercise of our discretion as to the permitting of an amendment. Entertaining the views which I have expressed, I think the decree dismissing the bill should be reversed, and that leave should be given to the plaintiff to file a supplemental bill, to bring in the personal representatives of Thomas Bloodgood, and to make the necessary averments in respect to his title as administrator, with the will annexed, to the bond and mortgage in suit, and that such leave should be given without costs.