Johnson *v.* Hess, Sheriff, *et al.*

No. 13,987.

## JOHNSON *v.* HESS, SHERIFF, ET AL.

JUDGMENT.—*Record of.*—*Constructive Notice.*—The record of a judgment is only constructive notice of all facts therein expressly recited, and of such facts as may be fairly inferred from the recitals.

SAME.—*Recording of by Wrong Name.*—*Constructive Notice.*—*Lien.*—The record of a judgment against William Mankedick is not constructive notice to a purchaser in good faith of real estate of which H. W. Mankedick is the remote grantor, that the judgment is against H. W. Mankedick and a lien upon the land.

From the Marion Superior Court.

*T. A. Hendricks, A. W. Hendricks, C. Baker, O. B. Hord, A. Baker, E. Daniels, A. C. Ayres, E. A. Brown* and *L. M. Harvey,* for appellant.

*S. Claypool* and *W. A. Ketcham,* for appellees.

BERKSHIRE, C. J.—The appellant was the plaintiff and the appellees the defendants below.

The complaint was in the nature of a bill in equity to enjoin the officer from levying an execution held by him in favor of his co-appellee upon certain real estate, the title to which was then in the appellant.

The cause was put at issue and tried at special term, and a special finding returned by the court.

Upon the facts as found by the court it stated its conclusions of law, and to the conclusions of law as stated the appellant reserved a proper exception, after which the court rendered final judgment.

Upon appeal to general term the judgment at special term was affirmed, and from the judgment in general term this appeal is prosecuted.

The correctness of the latter judgment depends entirely upon the propriety of the conclusions of law announced by the court at special term upon its finding of facts.

The special finding is quite lengthy, and, notwithstanding,

we feel that it is proper to set the same out in full in this opinion to a full understanding of the questions involved, and it is as follows :

" 1. On the 18th day of December, 1880, Thomas Graves was seized in fee simple of lot numbered three (3), in Little's subdivision of out-lot eighty-five (85), in the city of Indianapolis, Marion county, Indiana.

" 2. On the 18th day of December, 1880, Thomas Graves conveyed the fee simple of the real estate described in the last preceding finding to one William Mankedick, who was described in said deed as H. W. Mankedick, which deed was duly filed for record in the recorder's office of Marion county on the 25th day of July, 1881.

" 3. On the 10th day of June, 1881, the said William Mankedick executed to James G. La Fonte a deed of general warranty, conveying to said La Fonte the real estate described in the first finding. ·This deed was duly recorded in the recorder's office of Marion county, Indiana, on the 25th day of July, 1881. In this deed the grantor described himself as H. W. Mankedick.

" 4. On the 19th day of August, 1881, James G. La Fonte executed to William Johnson a deed of general warranty, conveying the real estate described in the first finding to the grantee, and this deed was duly recorded in the office of the recorder of Marion county, Indiana, on the 20th day of August, 1881, and thereupon said Johnson entered into possession of said real estate, and has continued in possession of the same until the present time. The consideration named in said deed was $1,800, which consisted of $600 paid in cash by said Johnson to said La Fonte at the time of the execution of said deed, and the assumption and payment by said Johnson of the two mortgages executed by Thomas Graves to the Middlesex Banking Company, hereinafter named.

" 5. On the 18th day of December, 1880, Thomas Graves executed to the Middlesex Banking Company a certain mortgage upon the real estate described in the first finding, to

secure the payment to said company of one coupon bond of that date, for the principal sum of $1,000, payable on the 18th day of December, 1885, with interest at the rate of eight per cent. per annum, payable semi-annually. The then value of two per cent. of said interest until maturity of said bond was paid by the mortgagor on said bond. And said mortgage was also to secure the payment from the mortgagor to the mortgagee of ten interest coupons attached to said bond executed by the mortgagor to the mortgagee, due in 6, 12, 18, 24, 30, 36, 42, 48, 54 and 60 months, respectively, each for the sum of $30. This mortgage was duly recorded in the recorder's office of Marion county, Indiana, December, 31st, 1880.

" 6. On the 18th day of November, 1880, William Graves executed to the Middlesex Banking Company another mortgage of the real estate described in the first finding to secure the payment, when they severally became due, of three promissory notes, dated the 18th day of December, 1880, executed by the mortgagor to the mortgagee, and due in 8, 14 and 20 months after date, with interest at the rate of eight per cent. per annum after maturity. This mortgage was duly recorded in the recorder's office of Marion county, Indiana, December 18th, 1880, each note for the sum of $63.95.

" 7. Upon the bond, interest coupons, and notes executed by said Graves to said Middlesex Banking Company, and secured by the mortgages heretofore referred to, William Johnson, on the 20th day of August, 1881, paid $30 of interest. On the 31st of August, 1881, he paid $63.95, paying off the first note. On December 19th, 1881, he paid $30, the amount of the second interest coupon. On the same day he paid $63.95, the amount of the second note. On September 25th, 1882, he paid $30.50, the amount of the third interest coupon, and on the same day he paid $63.95, the amount of the third note. On the same day he paid $1,017.33, being the principal of the bond and the accrued interest thereon up to September 25th, 1882, in all $1,299.88,

Johnson *v.* Hess, Sheriff, *et al.*

being full payment and satisfaction of said mortgages and the choses in action secured thereby. These payments were made by William Johnson for the purpose of paying off the encumbrances created by said mortgages, and for the purpose of relieving said real estate from the lien thereof, he believing all the time that he was the owner of said real estate in fee simple, and that the title thereto was perfect in him, except as it was encumbered by said mortgages. At the time said Johnson purchased said real estate there were some buildings thereon but the same were not in a tenantable condition, and for the purpose of making them tenantable he expended in the way of necessary repairs of a permanent character $309, and of the present value of $200. The present value of the real estate described in the first finding, without buildings or improvements, is $30 a front foot, or $1,350. The value of the improvements upon said real estate, outside of those made by William Johnson, is $1,400, making total value $2,950, of which value $200 represents improvements put on by William Johnson. William Johnson has received as rent upon the real estate described in the first finding from the time he went into possession of said real estate, as follows: Up to and including December 29th, 1883, $223.25, and from this date to May 24th, 1884, inclusive, the further sum of $65.75. From the last date up to and including April 8th, 1886, the sum of $233.55, making the total collection $518.55. To the last figures should be added $57 interest, from the time William Johnson purchased said real estate up to the present time. He did not live on the real estate himself, but occupied the same by his tenants, and used due diligence from the date of his purchase until this time in procuring tenants to occupy the same, and in obtaining the highest rent he could procure for the same.

" 8. Since the purchase of said real estate described in the first finding, by William Johnson, he has paid taxes on the same and the improvements thereupon as follows: (The

amounts paid for city, township, and State purposes, for the different years, are then stated, the sum total being $146.44, to which should be added the sum of $19 as interest).

" 9. On the 7th day of March, 1874, Miley Hazard executed to the Union Mutual Life Insurance Company his mortgage, of that date, on lot numbered three (3), in Foster and Harman's subdivision of lots numbered 12, 13, 14 and 15, in G. Sherman's subdivision, of a part of the north half ($\frac{1}{2}$) of the east half ($\frac{1}{2}$) of the northeast quarter ($\frac{1}{4}$) of section thirty-five (35), township sixteen (16) north, of range three (3) east, situate in Marion county, Indiana, to secure a loan then made by the mortgagee to the mortgagor, of $2,500, and the interest thereon; said loan maturing five (5) years after date. Said mortgage was duly recorded in the recorder's office, of Marion county, Indiana, on March 11, 1874. On the 24th day of June, 1875, said Hazard conveyed said mortgaged premises to Joseph M. Beck, and in and by said deed said Beck agreed to pay said mortgage. That afterwards said Beck sold and conveyed said real estate to John F. Council. That afterwards said Council sold and conveyed said real estate to William Mankedick, hereinbefore mentioned, and in and by said deed said Mankedick assumed and agreed to pay said mortgage; that afterwards, and on the 2d day of June, 1879, said Union Mutual Life Insurance Company filed in the Superior Court of Marion county its complaint, numbered 24,735, to which said Miley Hazard, the said William Mankedick, and others, were made parties defendant, and said William Mankedick was duly served with process therein. That afterwards such proceedings were had in said cause that on the 18th day of June, 1879, by the consideration of said Superior Court, said Union Mutual Life Insurance Company recovered a personal judgment against the said William Mankedick and others in the sum of $3,358.92, and there was a decree foreclosing said mortgage of the real estate therein described, and ordering the same to be sold to pay said judgment and the costs of

suit. The decree also provided that after the sale of the real estate therein named the residue, if any, should be levied of any other property subject to execution of the said defendant William Mankedick. That a certified copy of this decree was issued to the sheriff, on the 3d day of July, 1879, and under the provisions of the decree the sheriff sold the real estate therein described to the Union Mutual Life Insurance Company for the sum of one thousand dollars, on the 26th day of July, 1879, of which amount $943.30 was applied to the payment of the principal and interest, and $56.70 to the costs of the action. That afterwards, on the 24th day of November, 1883, the judgment against said William Mankedick being unpaid, except as to the sum of $943.30, paid on the 26th day of July, 1879, and the sum of $19.85, paid on the 21st day of February, 1880, an execution issued thereon, by order of said Union Mutual Life Insurance Company, to the sheriff of Marion county, Indiana, which execution was, by the sheriff of said county, on the 26th day of November, 1883, levied upon the real estate described in the first finding, and said real estate was advertised for sale upon said execution, and the sale was set for the 29th day of December, 1883, and the sheriff was, on the 28th day of December, 1883, enjoined from selling said real estate by an order of court made in this action. That afterwards, on the 24th day of May, 1884, the injunction having been modified by the court, and notice having been posted and given according to law, the said real estate was, by said sheriff, exposed to sale, and sold to the said Union Mutual Life Insurance Company for the sum of $950, and on the 31st day of May, 1884, said sheriff executed and delivered to said insurance company a sheriff's certificate of sale for said real estate, from which there has been no redemption, and on the 6th day of May, 1886, the sheriff executed a conveyance to the Union Mutual Life Insurance Company. In the judgment docket of the Superior Court of Marion county, at page 131, appears the following entry, under the head of

' parties :' ' Judgment-defendant, Mankedick, William, judgment plaintiff Union Mutual Life Insurance Company ;' under the heading ' amount of judgment,' ' dollars $3,358 ;' under the heading ' cents,' ' 92 ;' ' Decree : Date of judgment : June 18, '79. Order Book : Vol. 79, page 445 ;' number of cause, ' 24,735 ;' under the headings ' Receipts,' ' Satisfaction,' ' Assignment,' and ' Remarks,' is the following : ' For credit by sale, see execution docket 28, page 145 ; for credit by sale, see execution docket 32, page 152.' The three credits above referred to being the credits of July, 1879, for $943.30, upon the sale of the real estate originally mortgaged. The credit of February 21, 1880, for $19.85, upon the sale of personal property, and of $950 of the 31st of May, 1884, by virtue of the sale of the real estate described in the first finding hereinbefore stated.

" 10. The full baptismal name of the said William Mankedick was Henry William Mankedick, but in the city of Indianapolis, in Marion county, in the State of Indiana, where he resided at the time of making of the deed to him by Thomas Graves, and at the time of the making of the deed by him to James La Fonte, and at the time of the rendition of the judgment against him in favor of the Union Mutual Life Insurance Company, as hereinbefore found, he was generally known as William Mankedick, and was so known and called by his relatives and acquaintances. He left the State of Indiana soon after June 10th, 1881. From 1879 until he left the State of Indiana he was not in any particular business. During all of the time that the said William Mankedick resided in the city of Indianapolis he had a brother residing about three miles from said city, whose full baptismal name was Christian Henry Mankedick, but who was commonly known among his relatives and acquaintances as Henry Mankedick. When William Johnson was negotiating with James La Fonte for the purchase of the real estate described in the first finding, for the purpose of furnishing said Johnson evidence as to the condition of the title to

said real estate, said La Fonte handed said Johnson an abstract of the title of said real estate, and the encumbrances thereon, portions thereof prepared by Elliott and Butler, portions by William C. Anderson, portions by Ignatius Brown, and portions by Fred D. Miner, bringing the title to said real estate down to August 18th, 1881. The said Elliott and Butler, William C. Anderson, Ignatius Brown and Fred D. Miner, at the time they prepared the portions of said abstracts prepared by them, and still are reputed to be competent, careful, reliable and responsible abstractors at said city of Indianapolis, and were known to be such by said William Johnson, and he relied upon said abstracts as showing the true condition of the title of said real estate, and the encumbrances thereon. Said abstract of title did not show the judgment of the Union Mutual Life Insurance Company against said William Mankedick, or against any other person. Joseph T. Elliott, of the firm of Elliott & Butler, had been engaged in the business of abstracting titles in the city of Indianapolis for nineteen years, and said Ovid D. Butler has lived in the city of Indianapolis from his birth, forty-eight and one-half years ago. Joseph T. Elliott and Ovid D. Butler formed a partnership in the abstract business in said city in 1878, and have been in business ever since. Said Elliott, for many years prior to his partnership with said Butler, and said Butler and Elliott, from the formation of the partnership up to the present time, kept in the books of their office accurate statements showing the chain of title of the various town lots, and portions of town lots, in the city of Indianapolis, and of the real estate in said county outside of said city, and showing the mortgages made and judgments and decrees entered in said county. That it was their habits from day to day to ascertain and enter upon their books all deeds and mortgages filed for record with the recorder of Marion county, and all judgments and decrees rendered in the courts of said county. On the 26th day of

July, 1881, they prepared an abstract of title to the real estate described in the first finding, commencing their examination at December 14th, 1880, and coming down to July 26th, 1881, which covered the date of the record of the deed from Thomas Graves to H. W. Mankedick and H. W. Mankedick to James G. La Fonte, but did not place in said abstract the judgment and decree in favor of the Union Mutual Life Insurance Company against William Mankedick. They had in their office at the time on their books an entry showing the rendition of said decree, but they did not place the same upon said abstract, because they did not know or believe that H. W. Mankedick and William Mankedick were one and the same person. That said abstractors knew there was a judgment against a man by the name of William Mankedick, but they made no effort to learn who William Mankedick was; whether William and Henry W. Mankedick were different persons. That they (said abstractors) had no acquaintance with any one named William Mankedick, and they had no knowledge or information of the existence of such a person in Marion county, Indiana, and believed that William and H. W. Mankedick were different persons.

"12. William Johnson resides on Blake street in the northwestern portion of the city of Indianapolis, and has resided at the said place ever since the autumn of 1857. At the time of his negotiation with La Fonte and his purchase of the real estate described in the first finding, and its conveyance to him by La Fonte, he was not acquainted with any person named Mankedick, and had never heard of the name until he saw the name of H. W. Mankedick in the abstract furnished him by La Fonte. He did not know, and had no reason to believe, that H. W. Mankedick and William Mankedick were the same person, and had no knowledge or information other than may be implied, if any may be implied, from the facts herein found, that the Mutual Life Insurance Company had a judgment against William Mankedick, and the first information he had that it was ever

claimed that H. W. Mankedick and William Mankedick were the same person, or that the Union Mutual Life Insurance Company had a judgment against William Mankedick, was immediately before the commencement of this suit. When William Johnson purchased from said La Fonte the real estate described in the first finding, and when the deed for the same was executed by said La Fonte to him, and from that time until immediately before the commencement of this suit he believed, in good faith, that he was acquiring and had a perfect title in fee simple in said real estate, subject only, however, to the mortgages of said Thomas Graves to the Middlesex Banking Company, and said mortgages were paid off by him, said improvements made by him, and said taxes were paid by him, believing, in good faith, that he had and possessed such perfect title.

" 13.  This action was commenced on the 28th day of December, 1883.

" 14.  The said William Johnson is entitled to interest upon the $1,299.68, mentioned in finding No. 6, to the amount of the aggregate sum of $339.79, counting interest on the items which make up the $1,299.68 at the rate of eight per cent. per annum, except as to the item of $1,000 on which interest is counted at six per cent. per annum up to the date of maturity of the bond set out in finding No. 5. The interest upon said sum of $1,299.68 is counting interest at six per cent. throughout $308.47.

" 15.  The court further finds that the bond and the several interest coupons and notes mentioned in the seventh finding above, provided for the payment of attorney's fees, and that the reasonable and customary attorney's fees amount to $60."

Upon the foregoing facts the court finds the following *conclusions of law :*

" 1.  That the judgment in favor of the Union Mutual Insurance Company against the said William Mankedick became a lien upon the real estate purchased by the said William

Mankedick from Thomas Graves on and after the date of said purchase, December 18th, 1880.

" 2. That the plaintiff, William Johnson, when he purchased the said real estate, purchased the same subject to the lien of said judgment for so much thereof as then remained unsatisfied.

" 3. Said plaintiff is entitled to be subrogated to all rights of the Middlesex Banking Company in and to said real estate by reason of the payment by him of the debts secured by said mortgage, executed to said company by Thomas Graves, and as between the plaintiff and the defendant herein, the Union Mutual Life Insurance Company, the principal and interest of said mortgage indebtedness, paid by the plaintiff to the said Middlesex Banking Company, is to be treated as still outstanding and unpaid and due to the plaintiff and a lien upon said real estate, and in taking the account between him and the said defendant, the Union Mutual Life Insurance Company, the plaintiff is entitled to credit for principal and interest paid by him of said mortgage indebtedness.

" 4. That said plaintiff is also entitled to interest in the taking of said account for the taxes upon said real estate paid by him since his purchase thereof.

" 5. That said plaintiff is also entitled to credit in the taking of said account for the present value of the permanent improvements made by him on said real estate since his purchase thereof.

" 6. That said plaintiff is chargeable with such parts of the rents and profits collected by him out of said real estate since he went into possession thereof, as is expressed in the following proportions, that is to say, as the whole value of said real estate (including as well the improvements upon it at the time of plaintiff's purchase thereof, as, also, those made by him thereon since his purchase) is to the value of the improvements made thereon by him, so is the whole amount of rents collected by him to the part of such rents

for which he is chargeable in taking the account with said defendant.

" 7. That the plaintiff is entitled to have the foreclosure of the said mortgage executed by Thomas Graves to the Middlesex Banking Company, and to have said real estate sold, as upon a decree of foreclosure, and proceeds applied to payment of plaintiff's claim in case the Mutual Life Insurance Company fails to pay the amount of said claim.

" 8. That the plaintiff should recover as and for his attorney's fees the above sum of $60 in addition to his other claim.

" 9. That each party ought to pay his own costs up to and including the final entry, of which final entry each party should pay one-half."

As will be readily observed, the single question presented is, whether or not the judgment of the appellees was a lien that could be enforced against the real estate in the hands of the appellant ?

That it was a lien upon the real estate that could have been enforced against H. W. Mankedick so long as he held the title, or against his grantee, with actual notice, must be conceded.

The question is, therefore, reduced to this : Was the judgment, as recorded, constructive notice to the appellant of the existing lien ?

He was a purchaser in good faith for value, and had no actual notice that would even create a suspicion that the appellee company held a lien upon the real estate.

The record of the judgment carried with it constructive notice of all facts therein expressly recited, and as well of such facts as might be fairly inferred from its recitals, but nothing more.

Mr. Pomeroy, in his Equity Jurisprudence, says : " The test is a plain and simple one. It is, whether the record, if examined and read by the party dealing with the premises, would be an *actual* notice to him of the original instrument,

and of all its parts and provisions.   By the policy of the re-
cording acts, such a party is called upon to search the records,
and he has a right to rely upon what he finds there entered
as a true and complete transcript of any and every instru-
ment affecting the title to the lands with respect to which he
is dealing.   A record can only be constructive notice, at
most, of whatever is contained within itself.   Finally, the
record will not be notice, unless it and the original instru-
ment of which it is a copy correctly and sufficiently describe
the premises which are to be affected, and correctly and suffi-
ciently state all other provisions which are material to the
rights and interests of subsequent parties.   The premises
should at least so be described or identified that a subsequent
purchaser or encumbrancer would have the means of ascer-
taining with accuracy what they were.   The same rule ap-
plies to the record of mortgages and all other encumbrances
which can be recorded.   The language both of the original
and of the record must be such, that if a subsequent pur-
chaser or encumbrancer should examine the instrument itself,
he would obtain thereby an actual notice of all the rights
which were intended to be created or conferred, by it." Sec-
tion 654.

And though the section above relates more particularly to
instruments such as deeds, mortgages and contracts, to which
registration laws are applicable, the author elsewhere states
that the discussion is equally applicable to judgments.   In
a note appended to the foregoing section the editor says:
"As illustrations of such mistakes affecting the operation of
the record as constructive notice, would be an error in
the description or location of the premises included in the
original deed or mortgage; an error in the name of a
grantor or mortgagor; an error in the amount of the debt
for which the mortgage is a security, and the like," and
the following cases are cited:   *Jennings* v. *Wood,* 20 Ohio,
261 ; *Miller* v. *Bradford,* 12 Iowa, 14; *Hughes* v. *Debnam,*
8 Jones (N. C.), 127 ; *Wyatt* v. *Barwell,* 19 Ves. 435 ; *Peck*

v. *Mallams,* 10 N. Y. 509. We cite *Gilchrist* v. *Gough,* 63 Ind. 576.

If there should be any difference in the application of the rule, as stated by Pomeroy : *"A record can only be a construct-ive notice, at most, of whatever* is contained within itself," it should be applied with more strictness to judgment lien-holders than to any other class of persons to whom it is ap-plicable. A judgment lien is strictly a legal lien, general in its character, resting upon statute.

In *Shirk* v. *Thomas,* 121 Ind. 147, the history and char-acter of judgment liens were thoroughly and exhaustively considered, and as the result the following conclusion was reached : " In strictness, neither a judgment nor an attach-ment is a lien upon land; both are simply charges against land, existing by virtue of statute. ' Lien upon a judgment,' said an eminent English judge, ' is a vague and inaccurate expression.' "

In *Boyd* v. *Anderson,* 102 Ind. 217, this court said : " It is the settled law in this State, that judgment creditors are in no sense purchasers ; that their judgments are general liens upon whatever interest the judgment defendants may have in the land."

In the further consideration of the case it will not be amiss to keep in mind that the claim of the appellee company, on which depends the contention of each of the parties, rests wholly and entirely upon a mere technical statutory right, while that of the appellant has for its foundation not only the legal title to the land in question, but such title is sup-ported and upheld by well-grounded equities.

We will assume that the rule, as stated in *McPherson* v. *Rollins,* 107 N. Y. 316 (1 Am. St. Rep. 826), is correct as ap-plicable to the facts of this case (and in view of the author-ities it is certainly fair to the appellees), and it must follow that the appellant was a purchaser without notice.

The court, in that case, said : " The important inquiry before the referee was, whether the defendants had any notice,

actual or constructive, of the plaintiff's rights, or of the character in which Deming held the mortgage. His finding that they had no actual notice reduces our inquiry to the effect of the recording act. As intending purchasers, they must be presumed to investigate the title, and to examine every deed or instrument forming a part of it, especially if recorded. They must, therefore, be deemed to have known every fact disclosed: *Acer* v. *Wescott*, 46 N. Y. 384 (7 Am. Rep. 355); and every other fact which an inquiry, *suggested by those records, would have led up to.*" (The italics are our own.) "Thus they are plainly chargeable with notice of the mortgage, and of all the facts of which the mortgage could inform them."

The appellant was chargeable with the fact that the appellee company held a judgment against William Mankedick, and of the amount and terms, and conditions of the judgment, but nothing more. He was not chargeable with notice that his remote grantor, H. W. Mankedick, and the William Mankedick named in the judgment were the same person. The judgment did not disclose this fact, nor did it. suggest inquiry which " which would have led up to " an ascertainment of the fact.

For all legal purposes the full name of the appellant's grantor was Henry Mankedick; the middle initial was unimportant, and suggested nothing. *Franklin* v. *Talmadge*, 5 Johns. 84; *Roosevelt* v. *Gardinier*, 2 Cow. 463; *Milk* v. *Christie*, 1 Hill, 102; *Chute* v. *Emmerich*, 79 N. Y. 342; *Schofield* v. *Jennings*, 68 Ind. 232; *Morgan* v. *Woods*, 33 Ind. 23; *Zellers* v. *State*, 7 Ind. 659; *Vawter* v. *Gilliland*, 55 Ind. 278; *Gardner* v. *State*, 4 Ind. 632; *Burton* v. *State*, . 75 Ind. 477; *Allison* v. *Thomas*, 72 Cal. 562.

In *Games* v. *Stiles*, 14 Peters, 322, the Supreme Court of the United States said: "The law knows of but one christian name, and the omission or insertion of the middle name, or of the initial letter of that name, is immaterial; and it is competent for the party to show that he is known as well

without as with the middle name." *State* v. *Smith*, 12 Ark. 622 (56 Am. Dec. 287) ; *Edmundson* v. *State*, 17 Ala. 179.

As a question of law, the notice which was carried to the appellant was, that he held title through Henry Mankedick, and that the appellee company held a judgment against William Mankedick. But if it had occurred to the appellant that William Mankedick, the judgment debtor, and H. W. Mankedick, the remote grantor, were but two names for the same person, there was nothing in the record to suggest to him where he could acquire the information. There was nothing to suggest to the purchaser that the judgment creditor had such knowledge ; he had a right to assume to the contrary, as the judgment had been taken against William Mankedick, for he had a right to assume that the creditor had taken judgment against the debtor by his baptismal name. But had the appellant undertaken to have made inquiry, he might or he might not have learned that the appellee company's judgment debtor was, in fact, his remote grantor. Had he made diligent inquiry and reached a wrong conclusion, the legal effect of the record as constructive notice would not have been changed thereby. If upon inquiry the appellant had ascertained that the judgment debtor and his remote grantor were, in fact, but one person, he would then have had actual notice ; but the question here is one of constructive notice under a statute. The record must conclusively create notice or there is no constructive notice. If the information which it conveys, or the inquiry which it suggests will, if pursued, unmistakably lead to a discovery of the truth, then there is constructive notice of the title or encumbrance, otherwise there is no such notice.

In speaking of the American theory under the recording statutes, in section 649 of his work on Equity Jurisprudence, Mr. Pomeroy says : " By this theory, the object of the legislation is that the proper record of every such instrument should be *absolute* notice of its contents, and of all rights, titles, or interests, legal and equitable, created by

or embraced within it, to every person subsequently dealing with the subject-matter whose duty or interest it is to make such a search of the records." See, also, section 654, *supra;* see, also, section 655.

There may be a species of constructive notice arising from information of some extraneous facts which may be rebutted, but no such rule is applicable to the question of notice under the recording statutes. Pomeroy Eq. Jur., section 607. This must necessarily be so, for if the fact of constructive notice arising from a public record might be rebutted in one case it might in all, and the result would be that notice under the registration and recording statutes would be *prima facie* only.

The case of *Acer* v. *Wescott, supra,* referred to with approval in *McPherson* v. *Rollins, supra,* involved the question as to whether a recital in a deed that it was made pursuant to a certain contract of sale between the grantor and grantee was constructive notice to a mortgagee of the grantee of existing equities in favor of the grantor arising out of the contract. The recital was as follows: " This conveyance is made in pursuance of a contract of sale of said premises, made and entered into by the party of the first part for the conveyance thereof to one Ezra W. Acer, of whom the said party of the second part has become the assignee or purchaser, and as such entitled to a fulfilment thereof, by virtue of this conveyance; said contract being dated January 29, 1864." It was insisted that the recital was constructive notice to the defendant of the plaintiff's equities in the property; and having this notice he was bound to have examined the contract, and that he would have found the plaintiff's equities. The court in reply to this contention, said : " In all cases, other than conveyances or assignments by parties themselves competent to assign, the purchaser is bound to see that the conveyances have been made according to law, so as to carry the title. Not so where the recital states nothing to arrest the attention or arouse the suspicion of a person of ordinary

care, as that the conveyance is made pursuant to a contract with the vendor, or with Mr. Acer, the assignor of the vendee, who assigned the contract to him, and he is entitled to a deed in fulfilment thereof. The parties being all competent to convey, no constructive notice of Acer's equity is found there."

See *Taylor* v. *Harrison*, 47 Texas, 454 (26 Am. Rep. 304). In that case it is said : " But purchasers and creditors are only charged by construction with notice of the facts actually exhibited by the record, and not with such as might have been ascertained by such inquiries as an examination of the record might have induced a prudent man to make."

In *Birdsall* v. *Russell*, 29 N. Y. 220 (250), the court said: " The rights of a purchaser are not to be affected by constructive notice, unless it clearly appear that the inquiry suggested by the facts disclosed at the time of the purchase would, if fairly pursued, result in the discovery of the defect, existing but hidden at the time. There must appear to be in the nature of the case such a connection between the facts discovered, and the further facts to be discovered, that the former may be said to furnish a clue—a reasonable and natural clue—to the latter." The doctrine here enunciated was approved in the case of *Jones* v. *McNarrin*, 68 Maine, 334 (28 Am. Rep. 66).

The case of *Gilchrist* v. *Gough*, 63 Ind. 576, is, we think, much against the position taken by the appellees. The facts in that case, shortly stated, were as follows : Gough and wife executed a mortgage to the appellant to secure the sum of $5,000. After its execution the mortgage was left at the recorder's office for record, and on the day named it was duly recorded, except, because of the oversight or mistake of the recorder he wrote the words " five hundred dollars," instead of the words " five thousand dollars," as it should have been, so that the record only showed a mortgage for five hundred dollars. In the " Index of Mortgages " kept by the re-

corder, and in a column thereof kept for that purpose, the mortgage was entered as for five thousand dollars. Afterwards Gough and wife executed a mortgage to Jacob Huffman for $3,500, and thereafter a second mortgage to Huffman. The two mortgages to Huffman were duly recorded.

At the time Huffman received his mortgages he had no knowledge or notice of the amount of the appellant's mortgage except as disclosed by the record, as found in the recorder's office. It was held in that case that Huffman was not bound by the index kept by the recorder, though it stated the amount of the appellant's mortgage correctly, for the reason that the law did not require the amount of the consideration to be recited therein, and that Huffman was only held to constructive notice of the record of the mortgage as the recorder had made it.

He had actual notice of the contents of the index, and when it and the record were considered together, necessarily a mistake in the index or in the record was suggested, as well as the source for ascertaining the correct information, that is, the original mortgage. But the court holds that Huffman had a right to look to the record; that it was conclusive as constructive notice.

As we have already said, there was nothing to suggest to the appellant that H. W. Mankedick and William Mankedick were two different names for the same person, and he had a right to assume that the appellee company knew the baptismal name of its debtor, and had taken its judgment accordingly. If the lien had been specific the description of the real estate might have been sufficient to have called the purchaser's attention thereto. It was the duty of the said appellee to have ascertained the correct name of its debtor and to have sued him in that name, as it was the duty of Gilchrist to see that his mortgage was properly recorded; had it done so the questions here involved could not have arisen. The following cases fully support our conclusion: *State, ex rel.,* v. *Davis,* 96 Ind. 539; *Lowry* v. *Smith,* 97 Ind.

Johnson *v.* Hess, Sheriff, *et al.*

466; *Moore* v. *Davis*, 58 Mich. 25; *Grundies* v. *Reid*, 107
Ill. 304; *Thomas* v. *Desney*, 57 Iowa, 58; *Wood* v. *Reynolds*,
7 Watts & Serg. 406; *Ridgway's Appeal*, 15 Pa. St. 177;
*Saylor* v. *Com.* (Pa.), 5 Atl. Rep. 227; *Hutchison's Appeal*,
92 Pa. St. 186; *Battenhausen* v. *Bullock*, 11 Bradw. (Ill.)
665; *Galway* v. *Malchow*, 7 Neb. 285; *Barnard* v. *Campau*,
29 Mich. 162; *Gale* v. *Morris*, 29 N. J. Eq. 222; *Buchan*
v. *Sumner*, 2 Barb. Ch. 165 (47 Am. Dec. 305); *Bell* v.
*Davis*, 75 Ind. 314; Sheppard Touchstone, 366*n.*

We have not overlooked the case of *Gillespie* v. *Rogers*,
146 Mass. 610.   That case is in conflict so far as it may not
seem to agree with the conclusion which we have reached
with our own cases, to wit, *Gilchrist* v. *Gough, supra,* and
*Lowry* v. *Smith, supra.*

We have not considered the question of agency so ably
discussed by counsel for the appellees, as it becomes wholly
unimportant in view of the conclusion to which we have
come, as it does not appear that the abstractors had any
other notice than such as the record discloses.

For the reasons herein stated, the judgment of the supe-
rior court, in general term, affirming its judgment at special
term, is reversed, with costs, and with directions to remand
the cause to special term for a restatement of the conclu-
sions of law in accordance with this opinion, and for judg-
ment in favor of the appellant.

ELLIOTT, J., did not sit in this case.

Filed Oct. 10, 1890; petition for a rehearing overruled Dec. 11, 1890.