Bell v. Davis.

No. 8960.

## BELL v. DAVIS.

SUPERIOR COURTS.—*Judgments of.*—*Statute Construed.*—Under section 12 of the act establishing superior courts, 2 R. S. 1876, p. 23, judgments of a superior court have in all essential particulars the same effect as those of the circuit court.

SAME.—*Transcript of Judgment.*—*Lien.*—The provisions of the act, *supra*, authorize the filing and docketing of transcripts of judgments rendered by a superior court, and upon a compliance with the law in relation thereto such judgments become a lien upon the lands of the judgment debtor situate in the county where the transcripts are filed and docketed.

JUDGMENTS.—*Transcript.*—*Lien.*—In order that a judgment shall constitute a lien upon real estate in a county other than that where rendered, a transcript thereof must be entered and recorded in the judgment docket of such county.

SAME.—*Real Estate.*—*Duty of Purchaser.*—*Diligence.*—If, before the purchase of real estate, the purchaser, having received information that a transcript of a judgment against the owner had been filed, goes to the proper officers, and in good faith causes an examination of the records to be made, and they disclose the fact that there is no judgment lien, he is justified in acting upon the belief that there is none.

From the Morgan Circuit Court.

*M. G. McLain* and *J. P. Baker*, for appellant.

*G. W. Grubbs* and *A. C. Harris*, for appellee.

ELLIOTT, J.—On the 7th of September, 1876, Bell, the appellant, recovered judgment in the superior court of Marion county, against Alcott & Ainsworth, for $727.33. Replevin bail was entered, and the execution returned. On the 25th day of the same month, appellant sent a transcript of the judgment, including the entry of replevin bail, by Cornelius B. Howell, to the clerk of the Morgan Circuit Court, with the proper fee. The judgment against the principal debtors, and the entry of replevin bail, were duly entered on the order book, but the clerk did not docket the entry of replevin bail by Howell. At the time the clerk made the entries in the order book, Howell was the owner of the real estate in controversy. On the 1st day of Feb-

ruary, 1877, Howell conveyed the said real estate to Mrs. Ainsworth, the wife of one of the principal debtors, and she conveyed the same property to the appellee on the 8th day of June, 1877. In June of the year following, Bell issued and levied an execution on the said real estate. Sale was made thereon, and the property purchased by Bell. This action was thereupon instituted by appellee to quiet title,. and he succeeded in obtaining the judgment sought.

Two of the questions of importance which this record pre-- sents, are these:

First. Was there any law in force in September, 1876,. authorizing the filing and docketing, in other counties, of. transcripts of the judgments of the superior court of Marion county?

Second. If there was such a law then in force, did the filing and entering of a transcript, from said superior court, upon the order book of the county to which it was sent, constitute a lien upon real estate of the judgment debtor in said county, or was it also necessary that such transcript should be properly entered upon the judgment docket?

Of these questions in their order. The appellee affirms that the law in force in September, 1876, did not authorize the filing of transcripts of the Marion Superior Court in other counties. The, appellant, upon the other hand, contends that the act organizing the superior court intended that the judgments of that court should become liens to the same extent and under the same conditions as those of the circuit courts of the State. The statute expressly makes transcripts of the judgments of the circuit courts liens upon lands of the judgment debtor in the county where they are properly filed and docketed, secs. 528 and 529 of the code.. Section 12 of the act creating the superior court provides: "Said court shall be a court of record and of general jurisdiction, and its judgments, decrees, orders, and proceedings shall have the same force and effect as those of the circuit

court, and shall be enforced in the same manner.'' We think the evident meaning of this section, even taking it apart from all the other provisions of the statute, is to make the effect of the judgments of the superior court in all essential particulars the same as those of the circuit court. The lien of a judgment of the circuit court may be carried to a different county from that in which the court sets, and unless the lien of the judgment of the superior court may in like manner be so extended, it is stripped of much of the force and effect which the law assigns to the judgment of the circuit court. To give the same force and effect to the judgment of the superior court that the law gives to that of the circuit court, it must be held that the lien of a judgment of the former may, the provisions of the statute applicable to judgments of the latter having been complied with, be conveyed to counties other than that in which the superior court sits. The solution of the question under discussion does not, however, depend upon the meaning to be attached to isolated provisions. The whole statute, together with its objects, the occasion and necessity which led to its enactment, the mischief intended to be remedied, and all like matters are to be considered in determining what construction it shall receive. It is upon this general doctrine that the case of *Hedrick* v. *Kramer*, 43 Ind. 362, proceeds, and what was there said by WORDEN, J., in delivering the opinion of the court applies with decisive force to the present case. We have no hesitation in holding that the law does authorize the filing and docketing of transcripts of judgments rendered by the superior court, and that upon full compliance with the law such judgments become a lien upon the lands of the judgment debtor situate in the county where the transcripts are filed and docketed.

. Second. The second of the questions stated is answered against the appellant by the case of *Berry* v. *Reed*, 73 Ind. 235. It is there expressly held, that, in order that the judg-

ment shall constitute a lien, the clerk of the county to which the transcript is transmitted must enter and record it in the judgment docket of the county.

It is suggested, rather than argued, that the appellee had notice before purchase of the filing of the transcript in the clerk's office of Morgan county. It appears from the special finding, that, pending the negotiations for the purchase of said land by Davis, Ainsworth notified Davis that he had been informed that Bell had filed a transcript of the said judgment in Morgan county against said Howell, while he was the owner of said lands ; that thereafter Davis procured an abstract of title, and that the clerk of said county of Morgan certified that the said property was free from all liens or judgments ; that the said Ainsworth, after the abstracts had been procured, said to Davis that he, Ainsworth, must have been mistaken, as it did not appear that such transcript was filed, and thereupon the sale was concluded, and the full consideration paid. Judgment liens are created by statute, and the requirements of the statute giving a lien must be complied with, or none exists. In this case no lien attached until the transcript was filed, entered and docketed as the statute requires. It is, therefore, extremely doubtful whether mere notice of the filing would have even put the purchaser upon inquiry, for a judgment gives no specific lien, creates no interest in property, but merely becomes a general lien when all has been done by the judgment creditor which the law requires. But we need not decide this question, for we think that, conceding that the information received from Ainsworth was such as to put Davis upon inquiry, it is conclusively shown that he did make the proper inquiry, did all that good faith and diligence required that he should do. He went to the officer in charge of the records, caused search to be made, obtained from the officer the proper certificate, and, acting upon the faith of the knowledge thus obtained, bought the property and paid full value for it.

We think that all that can be justly required of one receiving information that a transcript has been filed, is to go to the proper officer and in good faith cause an examination of the records to be made. If they disclose the fact that there is no judgment lien, he is justified in acting upon the belief that there is none. Officers and records are, in such cases, the proper sources of knowledge, and to these sources notice sufficient to put upon inquiry fairly and reasonably points. The case of a mere general judgment lien, depending for its validity entirely upon the provisions of the statute, is unlike a lien created by contract, as a mortgage, a vendor's lien, or the like. In the one case the lien owes its force and existence to the contract of the parties; in the other the lien owes its entire vitality and force to the provisions of the statute. Entering and docketing transcripts of judgments rendered in a different county are not simply methods of supplying notice, but they are the essential acts which create a lien. A transcript of a judgment lying in the vault of a clerk's office, neither entered nor docketed, is no more a lien on lands in that county than the last week's newspaper received by the clerk.

Judgment affirmed, with costs.