SULLIVAN STATE BANK ET AL. v. FIRST NATIONAL BANK ET AL.

[No. 11,914. Filed January 29, 1925.]

1. JUDGMENTS.—*A judgment is purely statutory, as well as the judgment creditor's rights thereunder.*—A judgment is purely statutory, and its existence and the rights of the judgment creditor must be measured by the statute creating it. p. 426.

2. JUDGMENTS.—*Judgment liens and their priorities are determined by the statute and not the courts.*—Courts cannot create judgment liens, that being a prerogative of the legislature, and their priorities are to be determined from the statute creating them. p. 426.

3. JUDGMENTS.—*Transcript of judgment against several defendants filed in another county must be entered in the judgment docket in the name of each defendant to create a lien against him.*—Where a transcript of a judgment against several defendants is filed in another county, the judgment must be entered in the judgment docket in the name of each defendant in order to create a lien against him; the entry of the judgment in the name of one defendant does not create any lien on the lands of the others. p. 429.

4. EVIDENCE.—*Admission of testimony that certain entry in judgment docket was not there when examined by witness was not error.*—The admission of testimony that a certain entry made by the clerk in the index to the judgment docket was

not there at the time it was examined by the witness was not error, as its only effect was to show when the entry was made.  p. 430.

5. EXECUTION.—*Execution sale of all defendant's real estate in a body would not affect the rights of prior mortgage lienors so as to authorize them to vacate the sale.*—The holders of first mortgage liens on real estate sold by the sheriff on executions upon junior judgments would not be affected by the fact that the land was not offered and sold in parcels and would have no right to have the sale vacated on that ground; hence a judgment setting aside such sale on the complaint of the holders of such mortgages was erroneous.  p. 431.

6. HUSBAND AND WIFE.—*Wife's interest in husband's land sold on execution.*—Under the provisions of §3014 Burns 1914, §2483 R. S. 1881, on execution sale of a husband's land for more than $20,000, his wife is only entitled to one-fifth of the net proceeds, and where the real estate sells for more than $10,000 and not exceeding $20,000, she is entitled to one-fourth as against all her husband's creditors except holders of mortgages in the execution of which she joined and those whose judgments are also against her.  p. 431.

From Gibson Circuit Court; *Marshall R. Tweedy,* Special Judge.

Action by the First National Bank of Oakland City and others against the Sullivan State Bank and others. From a judgment for plaintiffs, the defendants appeal. *Reversed.*

*T. Morton McDonald* and *Lindley & Bedwell,* for appellants.

*J. M. Vandeveer, S. L. Vandeveer, Sanford Trippett, Baltzell & Baltzell* and *A. L. Gray,* for appellees.

McMAHAN, J.—Complaint by the First National Bank of Oakland City, on a note signed by appellee Claude Thompson and for foreclosure of a mortgage on certain real estate in Gibson county, owned by said Thompson. Later a supplemental complaint was filed alleging that, since the commencement of the action, the clerk of the Greene Circuit Court had issued to the sheriff of Gibson county executions on certain judgments in

favor of appellants rendered in the Green Circuit Court against Claude Thompson; that the sheriff sold the real estate to the Sullivan State Bank without having offered it for sale in parcels and asked that the sale be vacated and set aside.

Appellee, Cleveland Life Insurance Company, here-after referred to as the insurance company, filed a cross-complaint asking judgment against Claude Thompson on account of a note, and for the foreclosure of a mortgage on the land described in plaintiff's mort-gage. It being conceded by all parties that the lien of the mortgage of said insurance company is prior to the liens of all the other parties, no further statement in reference to it need be made.

The First National Bank of Huntingburg intervened and by leave filed a cross-complaint against appellants alleging that on November 19, 1922, it recovered two judgments in the Gibson Circuit Court against Claude Thompson and others; that appellants had filed tran-scripts of their judgments in the office of the clerk of Gibson Circuit Court but that such judgments had not been entered and repeated in the judgment docket of said circuit court in the name of and as a judgment against Claude Thompson. It also asked that said sheriff's sale be set aside and be held to be void and that its judgments be declared to be prior and superior to the judgments of appellants.

Eurah B. Thompson filed a cross-complaint admit-ting that she had joined her husband in executing the mortgages to the insurance company and to the Hunt-ingburg bank and asked that the court, in case of a foreclosure, exhaust the two-thirds of the mortgaged real estate before her one-third interest therein as the wife of Claude Thompson be sold.

The facts were found specially and, in substance, are as follows: In June, 1918, Claude Thompson, being

the owner of the real estate described in the complaint and consisting of one hundred forty acres, executed his note to the Intermediate Life Insurance Company for $4,000; that Claude Thompson and his wife Eurah B. executed a mortgage to said insurance company on the real estate described in the complaint; that this mortgage was recorded in June, 1918, and later, with the note secured thereby, was assigned to appellee insurance company and that the amount due and unpaid on this note was $4,674.93.

On April 28, 1921, Claude Thompson gave the First National Bank of Oakland City his note for $10,000, and, to secure the payment thereof, he and his wife gave a mortgage on the 140 acres hereinbefore mentioned, to said last named bank. The amount due and owing on this note is $11,792.

On September 15, 1920, appellant Sullivan State Bank and appellant Sullivan Trust Company each obtained a judgment in the Greene Circuit Court for the sum of $1,759.14 and $4,267.69 respectively, both of said judgments being against the Pocket Oil and Gas Company, Claude Thompson and three other persons. On January 12, 1921, a certified copy of each of said judgments was filed in the office of the clerk of the Gibson Circuit Court and copied in the Miscellaneous Order-Book and, on said last named day, an entry was made in the judgment docket of said last named court showing the rendition of each of said judgments in favor of each of the appellants against "Pocket Oil and Gas Company, Joel Bailey, Ernest Suefer, Wilber N. Erskine, Claude Thompson," and indicating when and where said judgments were rendered, the amount of each and that the transcript had been filed January 12, 1921. In the front of said judgment docket, the clerk on January 12, 1921, indexed said judgments under the letter "S" as follows: "Plaintiff: Sullivan

Co. L&T. Co.—Pocket Oil & Gas Co., 249 Defendants,"
and "Plaintiff Sullivan State Bank—Pocket Oil & Gas
Co. Defendants."

After the execution of the mortgage to the First National Bank of Huntingburg, the clerk of the Gibson Circuit Court, in the index in the front of the judgment docket, on the page marked and indexed "T," made an entry as follows: "Plaintiff. Thompson, Claude—Sullivan State Bank Defendant, 249." Neither of said judgments was entered in said judgment docket nor indexed in any other manner than as heretofore indicated.

On August 2, 1922, the sheriff of Gibson county received from the clerk of the Greene Circuit Court an execution issued on each of said judgments, directing him to levy on the property of Claude Thompson, to satisfy said judgments.

On May 22, 1922, appellee Citizens Trust and Savings Bank obtained a judgment in the Gibson Circuit Court against Claude Thompson and another on which there was due and unpaid $37.63.

On November 13, 1922, appellee, First National Bank of Huntingburg, recovered two judgments in the Gibson Circuit Court, one being for $1,158.27, and $10.60 costs, the other being for $2,273.75, and $4.05 costs. The first of said judgments was against Claude Thompson and his wife Eurah B. Thompson, while the last one was against Claude and Eurah B. Thompson and William Struckman.

December 2, 1922, the sheriff gave due notice by advertising and posting that on December 23, 1922, he would sell said 140 acres of land to satisfy the said judgments of appellants against Claude Thompson, in accordance with the executions theretofore received from the clerk of the Greene Circuit Court. On December 23, the sheriff, pursuant to the said notice, of-

fered said real estate for sale, by first offering the rents and profits for one, two, three, four, five, six and seven years and receiving no bid therefor, he thereupon offered the whole of said real estate for sale, and sold the same to appellants for $7,095.38. The land so sold consisted of three forty and one twenty-acre tracts. At the time of such sale, one forty-acre tract, with the improvements thereon, was worth $9,500. The twenty-acre tract, with improvements, was worth $4,700. Each of the other two forties was worth $5,000. It was found that the sale of one or more of said tracts separately would not have diminished the value or injured the parcels remaining unsold and that the sheriff, in the exercise of a sound discretion, should have offered the land for sale in separate parcels and should have sold no more than was necessary to satisfy the executions.

It was also found that the mortgage lien of the insurance company was prior to the liens of the other parties; that the mortgage lien of the First National Bank of Oakland City was prior to the liens of all parties other than the insurance company; that the judgment lien of the Citizens Trust and Savings Bank was prior to the liens of all parties except the two mortgage liens; that the judgment liens of the First National Bank of Huntingburg were next in priority; that the interest of Claude Thompson was not sufficient to satisfy the mortgage liens and that it was necessary to sell all of said real estate, including the interest of Eurah B. Thompson, and that all of said real estate should be sold.

Upon these facts, the court concluded as a matter of law: (1) That the Cleveland Life Insurance Company had a first and prior claim on the real estate; (2) that the First National Bank of Oakland City had a second lien; (3) that the Citizens Trust and Savings

Bank had a third lien; (4) that the First National Bank of Huntingburg had a fourth lien; (5) that the Sullivan Bank and Sullivan Trust Company had a fifth lien; (6) that Eurah B. Thompson was entitled to one-third of the value of the real estate as against all creditors of her husband except the mortgage creditors and except as to judgments rendered against her; (7) that the sheriff's sale mentioned in the finding was void and should be set aside. The court also stated certain conclusions as to the amount due on each mortgage and that these mortgages should be foreclosed. The fourteenth and fifteenth conclusions were, that the certified copies of the judgments of the Sullivan bank and the Sullivan trust company were sufficient in form and substance to entitle them to be entered and recorded in the judgment docket of the Gibson Circuit Court for the purpose of acquiring a lien on the real estate owned by Claude Thompson.

Appellants separately excepted to each conclusion of law, filed separate motions for a *venire de novo*, and for a new trial.

The decisive questions presented by this appeal relate: (1) To the manner in which the clerk of the Gibson Circuit Court entered appellants' several judgments rendered in the Greene Circuit Court in the judgment docket when the transcripts were filed and entered in the order-book of the Gibson Circuit Court; (2) to the decree of the court vacating and setting aside the sheriff's sale on appellants' judgments; and (3) the conclusions of law to the effect that Eurah B. Thompson was entitled to a one-third of the real estate as to all defendants other than holders of mortgages in which she had joined and the holders of judgments against her.

Section 637 Burns 1914, §611 R. S. 1881, makes it the duty of the clerk of any court of this State render-

ing any judgment, to make out a certified copy of such judgment when requested by any person interested; that such copy may be filed in the office of the clerk of any circuit court of the State, and, when so filed, shall be recorded and entered in the judgment docket in the same manner as judgments rendered in such court. The next section of the statute provides that: "Such judgment from the time of filing the copy aforesaid, shall be a lien upon all the real estate  *  *  *  of the judgment-debtor, situated in the county where filed, as fully as if such judgment had been rendered therein." Section 635 Burns 1914, §608 R. S. 1881, makes all final judgments in the Supreme and circuit courts for the recovery of money liens on real estate for ten years from the time the judgment is rendered.

Section 609 Burns 1914, §582 R. S. 1881, provides that: "The clerk of every court of record shall keep a docket, in which he shall enter, within thirty days after each term of court, in alphabetical order, a statement of each judgment rendered at such term, containing—First. The names, at length, of all the parties. Second. The amount of the judgment and costs, and date of its rendition. Third. If the judgment be against several persons, the statement shall be repeated under the name of each defendant, in alphabetical order."

A judgment is purely statutory. Its very existence and the rights of the judgment creditor are and must be measured by the statute creating it. It begins, continues and terminates at the will of the legislature. *Houston* v. *Houston* (1879), 67 Ind. 276. Courts cannot create judgment liens. That is a prerogative of the legislature. The right of appellants to priority depends upon the section of the statute providing for the recording of judgments in a county other than the one where rendered.

In *Berry* v. *Reed, Sheriff* (1881), 73 Ind. 235, the court, in speaking of the statute, said: "The plain intent of the lawmakers was that the filing and recording provided for in section 528 should be substantially contemporaneous acts, and where, by the next section, it was enacted that the judgment should be a lien from the time of filing, it was meant as against subsequent purchasers without actual notice, that a judgment filed, recorded and docketed as required in the previous section, should be a lien. * * * But deciding nothing as to the lien of judgments in the counties where rendered, and where in every case there is a record, in some form, which is accessible to every purchaser, and confining our decision to the case before us, we hold that the transcript of a judgment filed in another county, under the provisions of sections 528 and 529 of the code, *supra,* does not create a lien against subsequent purchasers in good faith, without notice, unless recorded and entered in the judgment docket."

And in *Johnson* v. *Schloesser* (1896), 146 Ind. 509, 515, 36 L. R. A. 59, 58 Am. St. 367, it is said: "It will be observed that the sections of the statute authorizing the creation of a lien in one county by filing a transcript of a judgment from another county and causing the same to be recorded and entered in the judgment docket do not provide where such transcript is to be recorded. Burns' R. S. 1894, sections 619, 620, (R. S. 1881, §§610, 611). But they do provide where the judgment is to be entered. The practice is to record the transcript in the order book. The entry is required to be made in the judgment docket. The word docket is usually applied to the book or paper in which is entered a brief abstract of all proceedings in court. 5 Am. and Eng. Ency. of Law, 849. So that it would seem that there is much reason for holding that the entry in the judgment docket is as much a part of the

essential requirement to make a transcript of a judgment from another county a lien as the act of recording the transcript thereof in the order book."

In *Bell* v. *Davis* (1881), 75 Ind. 314, one Howell became replevin bail on a judgment rendered in the Marion Superior Court in favor of Bell, who thereafter sent a transcript of the judgment, including the entry of replevin bail, to the clerk of the Morgan Circuit Court. The judgment against the judgment debtors and the entry of replevin bail were duly entered on the order-book, but the clerk did not docket the entry of replevin bail by Howell, who, at that time, owned real estate in Morgan county, and who later sold the land to a good faith purchaser. Bell later caused the land to be sold on execution and became the purchaser at sheriff's sale. Davis, the purchaser from Howell, commenced suit to quiet his title. It was there held that no lien attached because the transcript of the judgment was not entered and recorded in the judgment docket. The court, at page 317, saying: "Judgment liens are created by statute, and the requirements of the statute giving a lien must be complied with, or none exists. In this case no lien attached until the transcript was filed, entered and docketed as the statute requires." And on page 318, the court said: "Entering and docketing transcripts of judgments rendered in a different county are not simply methods of supplying notice, but they are essential acts which create a lien."

And see *State, ex rel.,* v. *Record* (1881), 80 Ind. 348, which was a suit against the clerk, by the purchaser of the land involved in *Bell* v. *Davis, supra,* and where it was held the purchaser could not recover because the failure of the clerk to enter the judgment in the judgment docket did not injure the purchaser, for the reason that no lien attached to the land he had purchased

by the recording of the transcript without also entering it in the judgment docket.

In North Carolina, where the statute required a judgment to be docketed and indexed in a certain manner, it was held that a judgment, in order to be a lien, must be docketed in the way and manner pointed out by the statute, *Dewey* v. *Sugg* (1891), 109 N. C. 328, 13 S. E. 923, 14 L. R. A. 393.

Appellants contend that their judgments were recorded and entered in the judgment docket in substantial compliance with the statute and that their judgments became liens on the real estate of Claude Thompson January 12, 1921.

The facts as found by the court show that the judgment of each appellant was against five parties, viz.: Pocket Oil and Gas Company, Joel Bailey, Ernest Suefer, Wilber N. Erskine and Claude Thompson. Said judgments were entered in the judgment docket of the Gibson Circuit Court once and no more. The statement in the judgment docket was not repeated under the name of each defendant in alphabetical order as required by §609 Burns 1914, *supra.* There is nothing in the special finding indicating that the judgment docket was arranged and divided into parts or sections according to the letters of the alphabet. The inference is that it was not so arranged, but that judgments were entered therein one after another according to the date when entered; that the names of all the parties against whom a judgment was rendered were set out in a single entry or statement, and that in the front part of the docket were thumb indexed pages so arranged that the names of the persons against whom judgments had been entered could be indexed alphabetically. Accordingly, a judgment against Claude Thompson should be indexed or entered under the letter "T." Appellants' judgments were not

entered and repeated in the judgment docket under the names of the several parties against whom they were taken as required by statute. They were not entered alphabetically under the name of Claude Thompson. Nor were they indexed under his name. These judgments, therefore, did not become liens on the real estate of Claude Thompson located in Gibson county.

Appellants say there is nothing in the statute requiring an index of judgments to be kept and that the failure of the clerk to index the judgment against Claude Thompson did not prevent their judgments from becoming liens. True, there is no provision requiring the clerk to index judgments entered in the judgment docket other than the provision that where a judgment is rendered against more than one person, it shall be · repeated under the name of each person against whom it is rendered, alphabetically. So we have a case where the judgments were neither entered as required by the statute nor indexed in any manner. It is not necessary for us to determine what the effect of an index properly made would have been, since no index was made showing that these judgments had been rendered against Claude Thompson.

Appellees, over the objection of appellants, were permitted to prove that the entry made by the clerk of the Gibson Circuit Court, April 28, 1921, in the index to the judgment docket as follows: "Plaintiff, Thompson, Claude—Sullivan State Bank, Defendant, 249," was not there when the witnesses, a short time prior thereto, had examined the docket. There was no error in this action of the court. It was not an effort to impeach a public record as claimed by appellants. Its only effect was to show when the particular entry was made.

Appellants' next contention is that the court erred in its conclusion of law to the effect that the sheriff's sale

was void by reason of the failure of the sheriff to offer the land for sale in parcels before offering it for sale as a whole. In this connection, it must be kept in mind that the land was encumbered by mortgages and that the interest of Claude Thompson was not sufficient to satisfy the mortgage liens and that the whole of the real estate, including the interest of his wife, would have to be sold to satisfy mortgage liens. The value of the land was found to be $24,200. The mortgage and judgment liens which were prior to appellants' judgments amounted to about $19,000. The real estate being worth more than $20,000, according to the facts as found, Mrs. Thompson was only entitled to a one-fifth interest as against creditors. Neither she nor her husband made any objections to the sale on account of the fact that the sheriff had not offered it for sale in parcels. They were satisfied. It is clear that the interest of the husband subject to sale on execution is, and was not, sufficient to satisfy the mortgage and judgment liens. The fact that it was not offered for sale in parcels did not, and could not, affect the rights of appellees who asked to have the sale vacated, as their liens are prior to the rights of appellants. Not being affected by the sheriff's sale, they are in no position to complain or to have the same vacated. We, therefore, hold, under the facts, that the court erred in the seventh conclusion of law.

Appellants also contend that the court erred in its conclusion that Mrs. Thompson was entitled to one-third of the proceeds arising from the sale.

6. Under the facts found, she is only entitled to one-fifth of the net proceeds arising from the sale. §3014 Burns 1914, §2483 R. S. 1881. However, if upon the sale of the land by the sheriff to satisfy the mortgage liens, the land should sell for $20,000 or less, Mrs. Thompson would then be entitled, as against all

creditors except the holders of the mortgages and those holding judgments against her, to one-fourth the net proceeds arising from such sale. While the court found the value of the land at the time of the trial to be over $20,000, it may develop upon the sale of the land by the sheriff that its value will be $20,000 or less, and if so, Mrs. Thompson would then be entitled to one-fourth of the proceeds arising from such sale, subject to be reduced by the payment of the mortgage liens and the judgments rendered against her. Under these circumstances, the court should state a conclusion of law to the effect that if the land sells for more than $20,000, Mrs. Thompson's interest therein is one-fifth, but if it should sell for $20,000 or less, then her interest therein shall be one-fourth of the proceeds, and that her interest, whatever it may be, is subject to being reduced for the purpose of paying the mortgage liens and judgments rendered against her.

There was no error in overruling the motion for a *venire de novo*.

Judgment reversed, with directions to the court to state its conclusions of law in accordance with this opinion and to render judgment accordingly.